## THE BERGEN.

### THE ROBERT HADDON.

### THE RANZA.

(District Court, S. D. New York. April 30, 1901.)

COLLISION—FERRYBOAT AND STEAMER IN TOW—INSUFFICIENT LOOKOUT.

A ferryboat crossing North river in the evening *held* solely in fault for a collision with a steamship coming up the river in tow and disabled, where both tug and tow carried appropriate lights, but, through the insufficiency of the ferryboat's lookout, she failed to see the lights of the steamship until shortly before collision, and to keep out of the way, as she was bound to do, after receiving an alarm signal from the tug.

In Admiralty. Libel and cross libel for collision.

Convers & Kirlin, for the Ranza.
J. J. Macklin, for the Bergen.
Wing, Putnam & Burlingham, for the Haddon.

· · BROWN, District Judge. At about a quarter before 8 o'clock on the evening of January 23, 1901, as the large steamship Ranza, 439 feet long, was going up the North river in slack water at about the turn of the tide, in tow of the tug Robert Haddon ahead of her on a hawser about 130 feet long, with the assistance of two other tugs alongside of her the steamship came in collision with the ferryboat Bergen, about off Franklin street and nearly in mid-river, by which both the steamship and the ferryboat were damaged, and for which the above libel and cross libel were filed. ·

The ferryboat was on one of her regular trips from Hoboken to Barclay street, New York. She was proceeding somewhat diagonally across the river and downward. The tug and tow nearly up to the moment of collision had been proceeding about straight up river, a little on the New York side of mid-stream. The steamer was somewhat disabled. She had steam in only one boiler, sufficient only to turn around the propeller, so as to save its drag in the water; her helm could be moved by hand only; her whistle was wholly broken down. By herself she was not under command, and the masters of the tugs upon consultation before starting, considered that the appropriate signal lights to put up, besides the ordinary colored side lights, were two vertical red lights pursuant to article 41a of the international rules. These were accordingly put up on the halyards near the foremast, some 40 feet above water. The Haddon ahead exhibited, beside her colored side lights, three vertical white lights, indicating under the rules a tow above 600 feet in length.

The distance from Hoboken to Barclay street slip is about 1½ nautical miles. The collision was not far from midway between the two landings. The Bergen was seen from the Haddon soon after the former left her slip at Hoboken. No signal whistle was then given by either. When the Bergen and the Haddon were from 800 to 1,500 feet apart, a signal of two whistles was given by the Bergen, which was answered with two from the Haddon, which the latter immediately followed up with an alarm signal. Up to that time the Haddon had been showing her red side light and the Bergen her green light. They were on crossing courses. The duty of the Bergen was to keep out of the way, and the duty of the Haddon to keep her course and speed. The Bergen was going at the rate of 8 or 9 knots, the Haddon and her tow, probably at about 4 knots. The Haddon gave the alarm whistle because her pilot considered that the proposed maneuver of the Bergen was dangerous, and he gave the signal of two whistles immediately before his alarm, because he supposed that · he was bound to answer with two whistles the Bergen's signal of two whistles under inspectors' rule 3, which forbids giving contrary signals. No doubt this is a misconstruction of inspectors' rule 3, although I have found it to a large extent to be the understanding of pilots. In cases of danger contemplated by inspectors' rule 3, the answer should not be a signal like that received, but only of the short and rapid blasts provided by that rule.

It is claimed on behalf of the Bergen that the answering signal of two whistles immediately before the Haddon's danger signal, misled the Bergen; and the pilot of the Bergen claimed that that gave him

the right of way. This, however, is equally a mistake that has been many times condemned. The signal of two whistles in answer to the Bergen, I am satisfied, had no material influence on the result, for the immediate alarm signal was heard by the Bergen, and could not fail to be understood, notifying the Bergen of the risk of her attempt. The Haddon at the same time reversed and dropped back to the westward of the Ranza, thus giving all possible opportunity to the Bergen to avoid collision, and allowing her in fact 200 feet more space to clear the Ranza than by the rule of the ship she was entitled to. For the Bergen was bound to avoid the Haddon as well as her tow, and that too without the Haddon's surrendering control of her tow or dropping back, as she did in order to get out of the way of the Bergen. At the time the alarm signal was given there was abundant time for the Bergen to avoid both the Haddon and her tow, either by reversing at once, or by porting and going to the westward of the tow, or by starboarding and going to the northward and eastward. The Bergen did not reverse until after the Haddon dropped back and turned to the westward sufficiently to show her green light.

The lookout on the ferryboat was plainly deficient, and the red signal lights on the Ranza were not noticed until very shortly before collision, although some low white lights it was said were previously seen. The three vertical white lights on the Haddon, however, were sufficient to apprise the Bergen that there was a long tow and that the Bergen must keep out of the way. Neither the Haddon nor the Ranza in any way prevented her doing so, and she is, therefore, primarily liable for the collision.

I do not see any rational ground for holding either the Haddon or the Ranza in fault. They were seen at an abundant distance for the Bergen to perform her duty of keeping out of the way. The duty of the tug and tow was to hold their course and speed; and there was no material variation from this obligation, until the presence of immediate danger, when the Haddon dropped to the westward in aid of the Bergen, and the trifling turn of the Ranza's bow to the eastward was of no importance in the result.

A decree may be entered for the libelant in the first libel against the Bergen alone with costs, and dismissing the second libel with costs.