## THE BERGEN. THE ROBERT HADDON. THE RANZA.

(Circuit Court of Appeals, Second Circuit. January 6, 1904.)

### Nos. 45, 46.

1. COLLISION—FERRYBOAT AND STEAMSHIP IN TOW—INSUFFICIENT LOOKOUT.

A finding by the District Court affirmed that a ferryboat crossing North river in the evening was solely in fault for a collision with a steamship coming up the river in tow and disabled, on the ground that owing to the insufficiency of the ferryboat's lookout she failed to see the lights of the steamship until shortly before collision, and to keep out of the way, as she was bound to do after receiving an alarm signal from the tug.

2. SAME—DAMAGES.

An award of damages for collision on the report of a commissioner considered and approved.

Appeal from the District Court of the United States for the Southern District of New York.

These are appeals from final decrees of the District Court, Southern District of New York, holding the ferryboat Bergen solely responsible for a collision between herself and the S. S. Ranza. The latter was coming up the North river in tow of the tug Robert Haddon, on a hawser, with two additional tugs assisting her, made fast to the port and starboard sides of the steamer. The Bergen was bound from her slip in Hoboken to slip at Barclay street, New York. The decision of the District Court is reported in 108 Fed. 555.

Le Roy S. Gove, for appellant.
J. Parker Kirlin, for appellee the Ranza.
Chas. C. Burlingham, for appellee the Robert Haddon.

Before LACOMBE and TOWNSEND, Circuit Judges, and HOLT, District Judge.

PER CURIAM. We entirely concur with Judge Brown's opinion as to the maneuvers of the vessels, the rules of law applicable, and the responsibility for the collision. In the opinion as printed in the record it is stated that, up to the time the first signal was sounded, "the Haddon had been showing her green light and the Bergen her red light only." The context shows that this is an error of transcription or of printing—the colors should be reversed. This correction being made, it is unnecessary to discuss the navigation further. The Bergen was clearly in fault for the reasons stated by the District Judge, and his conclusion that no fault having any material influence on the result was committed by either of the other vessels is sound.

The appellant objects to some of the items of damage allowed by the commissioner. Five days' demurrage was allowed for detention of the vessel. It appears that, besides the repairs necessitated by the collision, other repairs were made to tail shaft and stern tube, and the

vessel was put on dry dock and there painted. She was towed to the dry dock, and lay in the slip for several days, surrounded with ice; thereafter she was docked and painted. The commissioner has carefully discussed her movements, and discriminated between detention for the repairs of collision injury and detention for painting, etc. He says:

"No cause appears for the delay in breaking up and freeing the ship from the ice, and docking and painting her, as soon as she arrived at the dry dock at 10:15 a. m. of February 12th, nor for the delay in so doing until 9:30 a. m. of February 17th, except the work of repairing the collision injuries, which did not require docking."

He found evidence of the doing of such work in successive entries in the log: "Laborers working on port bow." On the 14th, 15th, and 16th the log states that the work on port bow continued through both day and night. Evidently the greatest dispatch was used, and the time of detention made as short as possible.

Appellant criticises the evidence as not sufficient to show that the "work on the port bow had any connection with the collision damages." In view of the fact that the Bergen struck the Ranza on the port bow with such force that the bow was stove in, and of the concession by appellant that $2,950 was the fair and reasonable value of the work and materials required to repair such damage, this criticism is without merit. The log does not state that any work was done on board on the first of the five days, but the ship lay in the slip to be repaired, and presumably shop preparation of material was required before the work on board could begin.

Since the fair cost of repairs was concededly nearly $3,000, the two items of $100 and of $150, respectively allowed for surveyor's fees, are reasonable; they include, besides survey and recommendations, the making specifications and contract for repairs, and superintending and passing upon the work by both surveyors.

The commissioner allowed $109.25 for cables to and from Liverpool. Appellant contends that this amount includes matters other than those directly concerned with the collision, such as notification of loss of propeller at sea, and arrangements for charter for next voyage. The respondent contends that the commissioner excluded such messages, and that the items which make up the $109.25 relate solely to the collision and its sequela. The record sets forth all the messages in full (the price is 25 cents a word), and it is, of course, practicable to make a list of them—to draw off the words which deal with the collision, and make a calculation of their cost. It is not, however, to be expected that this court is to give its time to such clerical work over items trivial in amount. Even if the $109.25 includes all the messages sent and received, the appellant concedes that it covers many dispatches concerned solely with the collision. If he wished to have eliminated from it certain items included by the commissioner, he should have prepared some tabulation which would show precisely what items make up the $109.25, so that this court could conveniently determine whether any correction is required, and, if so, to what extent.

The decree is affirmed, with interest and costs.