### THE MONTAUK.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 231.

COLLISION (§ 93*)—STEAM VESSELS CROSSING—VIOLATION OF RULES.

The ferryboat Montauk on her way across the East river to her Brooklyn slip came into collision with transfer tug 18, which was coming up with a car float on each side. The Montauk three times blew signals of two whistles, which were not answered. The tug kept her course until immediately before collision, when she changed slightly to port, and the Montauk kept her course. Before collision, both vessels reversed full speed astern. *Held*, that the Montauk was clearly in fault for violation of inspectors' rule 2, which required her, having the tug on her starboard side, to keep out of the way, and for persisting in crossing the bows of the tug without agreement and when manifestly dangerous; that the tug was not in fault, inland rules (Act June 7, 1897, c. 4, art. 21, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]) requiring her to keep her course and speed; and, neither such rules nor the inspectors' rules requiring her to answer the Montauk's signals if she did not assent thereto, her slight change of course immediately before collision, if not justified by the "special circumstances" under article 27, was an error in extremis.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 93.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the New York, New Haven & Hartford Railroad Company against the ferryboat Montauk, the Union Ferry Company, claimant. From the decree, libelant appeals. Modified.

James T. Kilbreth, for appellant.

James J. Macklin and De Lagnel Berier, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. April 22, 1907, a little after 1 p. m., the ferryboat Montauk, on her way from her slip at Whitehall, N. Y., to her slip at the foot of Hamilton avenue, Brooklyn, saw the tug Wetherell with two schooners lashed together in tow on a hawser about 125 feet long coming up Buttermilk Channel. At the same time, just overtaking the schooners on their starboard hand was transfer 18 with a loaded car float some 300 feet long on each side, making a flotilla of about 100 feet in width.

The District Judge has hardly discussed the signals exchanged, the movements of the three vessels, or the way in which the Montauk and No. 18 came together, but, adopting substantially the story of the Montauk as to the signals, he finds the Montauk at fault for not keeping out of the way and the transfer for not answering and for changing her course somewhat to port just before the collision. The facts as stated by him are that the Montauk blew a signal of two whistles three times and then reversed full speed astern; that the Wetherell starboarded and went under the Montauk's stern; that the transfer, giving no answer, stopped and changed her course a little to port just before the collision.

He regarded the situation as governed by inspectors' rules 2 and 3, then in force. It must be said that they are not very clear, nor altogether consistent with the inland rules of 1897 (sections 2 and 5):

"Rule 2. When steamers are approaching each other in an oblique direction, as shown in the diagrams of the fourth and fifth situations, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other, which latter vessel shall keep her course and speed; the steam vessel having the other on her starboard side indicating by one blast of her whistle her intention to direct her course to starboard, so as to cross the stern of the other steamer; and two blasts, her intention of directing her course to port, which signals must be promptly answered by the steamer having the right of way, but the giving and answering signals by a vessel requiring to keep her course shall not vary the duties and obligations of the respective vessels.

"Rule 3. If, when steam vessels are approaching each other, either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same by giving several short and rapid blasts, not less than four, of the steam whistle; and if the vessels shall have approached within half a mile of each other, both shall be immediately slowed to a speed barely sufficient for steerageway until the proper signals are given, answered, and understood, or until the vessels shall have passed each other.

"Vessels approaching each other from opposite directions are forbidden to use what has become technically known among pilots as 'cross signals'—that is, answering one whistle with two, and answering two whistles with one. In all cases, and under all circumstances, a pilot receiving either of the whistle signals provided in the rules, which for any reason he deems injudicious to comply with, instead of answering it with a cross signal, must at once observe the provisions of this rule."

Rule 2 applies to steam vessels meeting each other in oblique directions. It requires the burdened vessel to indicate by whistle her intention either to cross the bow or to go under the stern of the privileged vessel. The privileged vessel is required to answer evidently with the same signals for the purpose of indicating that she understands the intention of the burdened vessel. The legal obligations of

each remain unaffected; that is, the burdened vessel must keep out of the way and the privileged vessel must hold her course and speed.

Rule 3 provides that, when either one of steam vessels approaching each other in any direction fails to understand the course or intention of the other, she shall blow several short, rapid blasts. It then forbids cross-signals to be blown by vessels approaching each other from opposite directions—that is, meeting head and head or nearly so—from which it may be fairly inferred that cross-signals may be blown by vessels approaching in other directions. Then it provides that "in all cases and under all circumstances" a vessel which deems a signal injudicious must instead of answering with a cross-signal observe the provisions of this rule; that is, slow down to a speed barely sufficient for steerageway, etc.

The duties of the privileged vessel to be collected from these two rules are as follows: If she does not understand the intention of the burdened vessel, she must blow several short, sharp blasts. If she does understand and thinks the intention of the burdened vessel judicious, she replies with the same signal. If she does understand, but thinks the intention injudicious, she immediately slows to a speed barely sufficient for steerageway. Two of these requirements plainly conflict with Inland Rules 1897, art. 18, rule 1 (Act June 7, 1897, c. 4, 30 Stat. 100 [U. S. Comp. St. 1901, p. 2881]) of which requires steam vessels to answer signals only when approaching each other head and head, or nearly so, and article 21 of which requires the privileged vessel to keep her course and speed.

The pilot of the transfer thought the signal from the Montauk was injudicious, which it certainly was. Accordingly under the inspectors' rules his duty was not to answer that signal, but immediately to slow down to a speed barely sufficient for steerageway.

At the time of the collision both vessels were reversing full speed astern, and the injuries to the Montauk show that neither could have had much headway. The transfer's starboard float struck the Montauk's forward rudder and the port float went under her starboard guard, inflicting very little damage. The only fault which could be imputed in our opinion to the transfer was her failure to hold her course and speed as required by article 21 of the inland rules. But her failure to do this, if not justified under article 27 to avoid immediate danger in the special circumstances of the case, was not a fault, but an error in extremis, when the collision owing to the gross fault of the Montauk was imminent. The decree is modified with instructions to the District Court to enter a decree in favor of the New York, New Haven & Hartford Railroad Company for its damages against the claimant of the Montauk, with interest and costs of both courts.