THE ELIZABETH.

(Circuit Court of Appeals, Second Circuit. May 20, 1912.)

No. 216.

COLLISION (§ 96*) — STEAM VESSELS CROSSING — VIOLATION OF STARBOARD HAND RULE.

As the steam lighter Scotia was passing up North River 600 to 800 feet out from the New York piers the ferryboat Elizabeth came out from her slip four °or five piers ahead, going across the river. When the pilot house was clear of the covered pier below, the pilot of the Elizabeth saw the Scotia 1,000 to 1,500 feet below, and at once blew a two-whistle signal, which was not heard. When further out, he repeated the signal, which was heard, but not answered. He then backed, but a collision followed. The master of the Scotia deemed it dangerous to try to cross ahead, and ported to go under the Elizabeth's stern. *Held,* that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Elizabeth was in fault for violating the starboard hand rule, which required her to keep her course and speed and required the Scotia to go to starboard as she did; that the Scotia was not in fault for not answering the Elizabeth's signal, to which she did not assent.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by James P. McAllister and others, owners of steam lighter Scotia, against the ferryboat Elizabeth, the Central Railroad Company of New Jersey, claimant. Decree for respondent, and libelants appeal. Reversed.

Wallace, Butler & Brown (James K. Symmers, of counsel), for appellants.

James J. Macklin (De Lagnel Berier, of counsel) for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The Scotia came from Brooklyn into the North River, bound for pier 36, Clyde Line. She was about 600 to 800 feet off the piers. About pier 5, North River, she met a Pennsylvania Railroad tug and tow. This she passed by starboarding a little, and afterwards ported to straighten up. When off pier 6 she saw a ferryboat coming out of her slip above pier 10, and when the latter was clear of the slip heading over to Jersey she (the Elizabeth) sounded a two-blast signal. The master of the Scotia considered the proposed navigation dangerous, his helm was ported when he heard the whistle, and he kept it so and later hard aported, swinging in toward the New York shore to allow the Elizabeth to cross his bows; the latter being the privileged vessel under the starboard-hand rule. He also stopped, reversed, and blew alarm whistles. Nevertheless they collided, the bow of the Elizabeth being then about 400 feet off the pier.

The Elizabeth unhooked from the bridge, blew her slip whistle, started with one bell and a hook-up, and when about the end of the rack slowed to one bell. The tide was flood, and she came out under a starboard wheel. Pier 10 south of her slip is shedded, and her pilot could not see down stream until he (in the pilot house) cleared it. As soon as he (in the pilot house) cleared the shed he saw the Scotia, as he says, about 700 or 800 feet out and 1,000 to 1,500 feet below his slip (which is about 400 feet above pier 10). He at once blew a two-blast whistle. Neither that nor the slip whistle was heard by the Scotia. No answer to his whistle being received, he kept on with his wheel hard astarboard, and when about 200 feet or more beyond pier 10, which projects much further out than his slip, he blew a second two-blast whistle. This was the one heard on the Scotia, and not answered. This second signal not being answered, the pilot of the Elizabeth stopped, and blew an alarm whistle, fol-

lowing that with two bells and a jingle to go astern full speed. When he stopped his engine, he estimates the Scotia was 400 or 500 feet below him.

We have little doubt that, had the Elizabeth when she sighted the Scotia navigated as the privileged vessel to cross the bow of the Scotia, this collision would not have happened. The question is, Was she in fault for not doing so? The starboard-hand rule operates on both vessels. The one is to get out of the way by change of course, or stopping or reversing. The other is to keep her course and speed.

The district judge excused the Elizabeth because it was a case of emergency. We cannot concur in this conclusion. The emergency was one which the pilot of the Elizabeth created by his own effort to navigate contrary to the rule. It did not arise until she had proceeded some distance on the theory that the Scotia would agree to his proposed change. When he saw the Scotia as his pilot house cleared the shed 1,000 to 1,500 feet below and 700 to 800 feet out, it must have been apparent that, if the Elizabeth would do what under the rule the Scotia was entitled to assume she would do, the Scotia would have no difficulty in clearing her by passing under her stern. Under these circumstances the Elizabeth took all the risks of maneuvering contrary to the rule, when she blew her first two-blast whistle and, without assent by the Scotia, proceeded till her own stern was 300 feet beyond the pier and her second whistle was unanswered.

The contention that the Scotia was in fault for not answering the Elizabeth's two-blast whistle is sufficiently answered by our opinion in the Montauk, 180 Fed. 697, 103 C. C. A. 663

The decree is reversed, with costs, and cause remanded, with instructions to decree in conformity with this opinion.