### THE JAMES L. MORGAN.
### THE NEW BRUNSWICK.

(District Court, S. D. New York. March 4, 1914.)

COLLISION (§ 93*)—STEAM VESSELS CROSSING—CROSSING SIGNALS.

A steam ferryboat, starting diagonally across North river, *held* solely in fault for a collision between a steam lighter and a tug, both of which were passing down, for failing to comply with the signals of the lighter, which was the privileged vessel, and to keep out of her way, instead of which she gave cross signals and attempted to cross the lighter's bows, causing the latter to turn sharply to starboard, which brought about the collision with the tug.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. § 93.*]

In Admiralty. Suit for collision by the Bush Terminal Company against the steam lighter James L. Morgan and the steam ferryboat New Brunswick, impleaded. Decree for libelant against the New Brunswick alone.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, of New York City, of counsel), for libelant.

Carpenter & Park, of New York City (Samuel Park, of New York City, of counsel), for steam lighter James L. Morgan.

Burlington, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for ferryboat New Brunswick.

HAZEL, District Judge. On May 6, 1912, at about 6 p. m., the steam tug Eleanor Bush, with a car float lashed to her starboard side, proceeded down North river, and, on seeing the ferryboat New Brunswick on her port side, blew a signal of one whistle to indicate her intention of keeping her speed and course. The ferryboat replied, assenting to the proposed movement. At this time the steam lighter James L. Morgan was also bound down the river, with the ferryboat on her right at a distance of from 75 to 100 feet, and the Eleanor Bush on her left at a distance of about 400 feet. She was going with the tide at the rate of about 12 miles an hour, and after giving two signals of one whistle each to the ferryboat, and receiving replies of two whistles each, she blew a danger signal, her master believing a collision with the ferryboat imminent, and reduced her headway, turning sharply to starboard and into the Eleanor Bush, striking her amidships. The libel was originally filed solely against the steam lighter, but the ferryboat was brought into the case under Admiralty Rule 59.

That the Eleanor Bush was injured without fault on her part is conceded on both sides, and therefore she must be compensated for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

her damages by the vessel in fault. The testimony offered on behalf of the ferryboat and that offered on behalf of the steam lighter is in sharp conflict, and cannot be reconciled, but I think it is fairly proven by credible witnesses and the probabilities that the Morgan, on first seeing the ferryboat emerge from her slip and proceed down the river on a course parallel with her, immediately indicated by one whistle her intention to keep her course; that upon receiving a reply of two whistles, she again blew one, and upon again receiving a reply of two, she immediately blew an alarm and reduced her headway, and that the ferryboat at the same time slightly turned from her course to carry out her intention of crossing the bows of the Morgan on her journey across the river to New Jersey, whereupon the master of the Morgan, to avoid striking the ferryboat, deemed it expedient to sheer sharply to starboard.

The testimony of the ferryboat is to the effect that she properly initiated the exchange of signals by blowing two blasts of her whistle to indicate her purpose of crossing the bows of the Morgan, but that the latter crossed her signal by blowing one whistle, and continued steadily on her course with a speed faster than that of the ferryboat, and negligently sheered when the ferryboat blew an alarm, and while she was still on a parallel course. But I think the witnesses were mistaken and confused the signals. The steam lighter was the privileged vessel, and had the right to keep her speed and course.

As the ferryboat had slightly turned for the purpose of crossing the bows of the Morgan, I think a situation was presented within rule 2 of the Inland Rules of 1897, in which it became her duty to keep out of the way, especially as she had received a signal of one whistle, to indicate the intention of the Morgan to keep her course and speed. The ferryboat must be held primarily in fault for giving a cross signal, for failing to keep out of the way, and for endeavoring to cross the bows of the privileged vessel.

I have examined the adjudication, The Montauk, 180 Fed. 697, 103 C. C. A. 663, to which counsel for the New Brunswick directed my attention as sustaining his contention that it was the duty of the Morgan to reduce her speed and sound an alarm on the instant that the ferryboat blew two whistles, assuming such to have been the fact, to indicate her dissent to the proposed movement; but the situation in that case is not the same as here, and the authority is therefore not thought in point.

It is also contended that had she been properly navigated, the steam lighter Morgan could have safely passed without striking the Eleanor Bush, as there was plenty of space between the ferryboat and the Eleanor Bush; but, in view of the oblique direction of the ferryboat and her speed, I am not convinced of this. The master of the steam lighter had sufficient cause to believe in the imminence of a collision with the ferryboat, and in this situation his sheering sharply to the right into the Eleanor Bush was not a fault.

A decree may be entered in favor of the Bush Terminal Company against the claimant of the New Brunswick for its damages, with interest and costs.