## THE SENATOR RICE.

### THE LUZERNE.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

Nos. 188–198.

COLLISION ☞61—TUGS AND TOWS CROSSING—COMMON FAULTS.

The railroad tug Luzerne, with a carfloat on the side, backed from her slip in North River a short distance above the Battery and started to turn up stream for the purpose of crossing the river to the company's terminal nearly opposite in Jersey City. There was a strong ebb tide, which swung the bow of the float temporarily down stream, from which direction the tug Senator Rice was approaching with a hawser tow. The Rice gave a signal to pass starboard to starboard, which was answered with a single whistle. Both vessels proceeded, and a collision occurred between the carfloat and a barge in tow of the Rice. *Held,* that the vessels were in fact on crossing courses, as the Rice should have known, and the starboard hand rule applied, which required the Rice to keep out of the way, and that she was in fault for not doing so; that the Luzerne was also in fault for not sooner stopping when the signals were crossed until the courses of the two vessels were definitely determined.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 78; Dec. Dig. ☞61.

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Eastern District of New York.

On appeal by the Lehigh Valley Transportation Company, claimant of the steamer Luzerne, and libelant in the second of the above-entitled suits, from a final decree of the District Court for the Eastern District of New York in a cause arising out of a collision between the barge Southern Cross in tow of the steamtug Senator Rice and a carfloat in tow of the tug Luzerne; which decree (215 Fed. 149) held the tug Luzerne wholly in fault and dismissed the libel against the Senator Rice, without costs.

Harrington, Bigham & Englar and D. Roger Englar, all of New York City, for Lehigh Valley Transp. Co.

·J. Parker Kirlin and William H. McGrann, both of New York City, for The Senator Rice.

Foley & Martin, of New York City, for C. F. Harms Co., owner of the scow Southern Cross.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. These appeals involve the question of negligence growing out of a collision between a carfloat lashed to the starboard side of the steamtug Luzerne, belonging to the Lehigh Valley Railroad Company, and a scow boat, the Southern Cross, the leading boat on a hawser tow of the Senator Rice, a large tug bound from the East River around the Battery and up the Hudson River. The Luzerne was destined for the Lehigh Valley Railroad terminal in Jersey City in the Morris Canal Basin opposite Pier No. 2 from which she started, directly above the Battery. The tide was ebb and, on emerging from the pier, the starboard bow of the carfloat caught the full force of the tide and it was impossible to avoid the temporary swinging of the bow down stream. We think, however, it is quite improbable that any experienced navigator, having knowledge of the harbor of the city of New York, and generally, of the destination of the railroad tugs, would suppose that a Lehigh Valley tug leaving pier No. 2 with a loaded float was destined for any point in the East River, or, in fact, for any point other than the Lehigh Valley terminal in New Jersey. There is no doubt that the bows of the carfloat and tug were headed down stream for a short period while the Luzerne was making the turn to the west and straightening on her course to Jersey City.

Neither is there any doubt that the ultimate courses of the two tugs were crossing and if they were in this position when the signals were given, or if the situation was such that the master of the Senator Rice knew, or should have known, that the courses would be crossing the moment the Luzerne got clear of the pier and had straightened on her course, it was his duty to keep out of the way. Even upon the Rice's testimony the courses were crossing and the starboard hand rule applied. It is well to have that rule distinctly in mind. Article 19 of the Pilot Rules (Act June 7, 1897, c. 4, 30 Stat. 101 [Comp. St. 1913, § 7893]) for inland waters provides:

"When two steam-vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other."

The Rice had the Luzerne on her own starboard side and we think the situation when it first developed was such as to involve risk of collision. Certainly if the Rice knew or had reasonable cause to believe that a Lehigh Valley tug was destined for the Lehigh Valley terminal, prudence required that her master should not insist upon passing starboard to starboard.

We have little doubt that when the signals were given the starboard hand rule applied. After the Luzerne had backed out of her slip, she commenced the turn under a port helm, making it evident that her course was not down the river or around the Battery. It was then the duty of the Senator Rice to keep out of the way until it was made plain what course the Luzerne intended to take.

When the Luzerne had cleared it was only a question of a few moments before it became evident that she was heading for her Jersey destination. While executing this maneuver the Rice blew two blasts, indicating that she would continue on her course and pass the Luzerne starboard to starboard. The Luzerne answered with one blast, indicating that she did not agree to the Rice's proposal. It may be true that at the time the signals were given they were not on crossing courses and there was nothing to indicate to the Rice what course the Luzerne intended to take. Still, after the Luzerne had indicated her intention not to accept the Rice's invitation to pass starboard to starboard it must have been evident that she was not destined for any point on the East River and common prudence would seem to require that the Rice should not insist upon proceeding upon the course indicated by her signals.

We see no reason why the Rice could not have slowed down and permitted the Luzerne with her unwieldy tow to straighten out and cross her bows. The District Judge expressly finds that:

"According to the testimony she had made this turn and was proceeding towards New Jersey for some distance before she crossed the bow of the tramp steamer and before any danger arose because of the proximity to the Senator Rice."

Anderson, a witness for the Cornell Company, testified that the Luzerne and tow were going across the river. The engineer of the Rice testified when he first saw the carfloat and the Luzerne "she was headed across the river." It seems to us that in view of the fact that the Rice had reason to believe, if, in fact, she did not know, that the Luzerne was destined for Jersey City as soon as she got straightened out, that the starboard hand rule applied. The least the Rice should have done was to slow down, which she could easily have done in the ebb tide, and wait until the situation developed. This is equally true of the Luzerne and results in both parties being held negligent for not recognizing a dangerous situation and waiting until it developed sufficiently to enable them to navigate safely. Such a result seems to us to be the best solution of a collision which appears to have been due to the stubbornness of both parties. That such a collision should have

occurred in broad daylight at a time when there was nothing in the elements to interfere with navigation seems inexplicable. It is hardly possible that the stupidity or obstinacy of a single master could have produced such a result and we think the collision was due to their combined action. Where property and life are at stake, neither party should insist upon persisting in a course which is likely to result in disaster when the delay of a few moments will insure the safety of both.

The decree is reversed with the costs of this court to the Luzerne and the District Court is directed to enter a decree in favor of the libelant against the Luzerne and the Rice each for one-half the damages and costs.