## A. H. BULL S. S. COMPANY v. UNITED STATES. THE CLARE. THE CHINOOK.

Circuit Court of Appeals, Second Circuit.
July 3, 1929.

No. 324.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for Bull S. S. Co.

Charles H. Tuttle, U. S. Atty., and Horace M. Gray, Sp. Asst. U. S. Atty., both of New York City, for the United States.

Harry D. Thirkield, of New York City, for appellee National Sugar Refining Co.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▇ The speed of the Chinook was very slight. She had got only a few hundred feet over the ground when she was struck, and though this proves that she was under way, since she was breasting a substantial tide, it also shows that she could not have acquired much momentum. Her equivocal navigation resulted from her failure to forecast what the course of the Clare was to be; she supposed the vessels would pass starboard to starboard, because the Clare was headed across her bows; indeed, Mr. Gray even insists that it was a crossing case. It was neither of these but a port to port passing. It is the proposed courses of the vessels that count, if they are apparent to each other. The Hallgrim, 20 F.(2d) 720 (C. C. A. 2); Commonwealth & Dom. Line v. U. S., 20 F. (2d) 729 (C. C. A. 2). The headings of vessels in a winding channel will change with the bends, but their courses are usually disclosed, and, when they are, each must prepare in advance for their headings when they meet. The Chinook was charged with notice that the Clare would port at the buoy, or, if in doubt, was bound at once to blow an alarm and back (article 18, rule III; Inspectors' Rules, rule I). It was therefore a fault to change her course to port, gratuitously assuming that the Clare meant to cross her bows.

Again, she was wrong in proposing to go out on the port side of the channel, a mistake which contributed to the result. Her proper course was to keep her southwesterly heading and get over where she belonged. While it is true that the Clare saw her in season to adapt her navigation to her position, she was only just under way, and the Clare rightly enough assumed that she would move over to the starboard side. Moreover, we can find no excuse for her failure to take the Clare's signal for herself, or to misunderstand it. Coupled with the Clare's position, about 500 feet from the east boundary of the channel, the mistake seems inexplicable. These initial misconceptions account for the curious vacillation in her movements, which, taken alone, are not perhaps to be charged against her; she was trying to meet the helm movements of the Clare, which only seemed unaccountable to her because of her disregard of the facts.

▇ The Clare's faults are not quite so clear. The position was right, her signal appropriate, and her first helm movement accorded, not only with her apparent purpose, but with proper navigation, though she was not as much cramped as she says, for she had enough room to starboard. But the Chinook, at her slight speed, was able to move less quickly, and the situation rested more in the Clare's hands than in hers. While we think that she was at fault before, she was certainly at fault after, seeing the Chinook's swing to

port, which threw her bows upon the Clare's proposed course. At that time her master puts the distance between the vessels at 1,500 feet, not enough, as he thought, to kill her way before they met. We are not satisfied that this is true, certainly if her speed was under 7 knots; at any rate she has not clearly enough proved that her breach of duty at that moment did not produce the result. A tide makes no difference in the approach of two vessels, which are both floating in it; it is apparent from a moment's consideration that the acceleration of one is exactly balanced by the retardation of the other, and that when both have seaway the current cannot play any part in the collision.

But her duty began before. Her signal had not been answered, and she could not in the nature of things know what the Chinook proposed to do. Under such circumstances a master is bound to stop his way. The New York, 175 U. S. 187, 201, 202, 20 S. Ct. 67, 44 L. Ed. 126; The Albert Dumois, 177 U. S. 240, 251, 252, 20 S. Ct. 595, 44 L. Ed. 751; The Munaires, 1 F.(2d) 13, 15 (C. C. A. 2); U. S. v. Grant, 11 F.(2d) 700 (C. C. A. 1). There is no more important rule, since vessels, though not quite dead, will so reduce their speed that the collision, if it occurs, will be insignificant, as certainly would have been the case here. Had the Clare done her duty shortly after her first signal—that is, as soon as she was in doubt as to the Chinook's navigation—this collision would not have happened. If she had done it as soon as the Chinook began to swing upon her course, it probably would not have happened. Instead of this, she tried to change the situation to a starboard passing, a hazardous effort at best, when no hazard need have arisen, had she been properly alive. Masters who choose to divine the purposes of other vessels and keep on, may avoid the charge of overcaution, but they take their chances. If they escape, well and good; if they fail, their owners pay.

The answer is that the decision was in extremis. We cannot agree. This is patently untrue, if we put back the time to that moment when it should have been apparent that the Chinook had not heard the signal, or at least did not mean to answer. It is also untrue, even when the Chinook's swing to port became evident. The decision to change to a starboard helm was when the ships were about two minutes away, and the Chinook was moving scarcely more than 2 knots. The Clare was already on a swing to starboard, which she must check and turn into the opposite. Even in extremis, if we can call this

that, some discretion is demanded; the phrase means no more than that less judgment is required in an emergency than when there is time to consider; it does not exculpate all faults; it is no more than a palliative. While the Chinook was perhaps somewhat more at fault, the fact remains that in broad daylight, with plenty of seaway, the Clare came into collision with a slowly moving vessel. We should have to be much better satisfied with her excuse to let her out. The phrase of the learned District Judge is apt, that both vessels reeled into collision.

Decree affirmed.