THE EUREKA NO. 91.

THE CITIES SERVICE KANSAS.

THE PERTH AMBOY NO. 2.

THE REVERE.

THE PENTUCKET.

CITIES SERVICE OIL CO. v. DALZELL et al.

District Court, S. D. New York.
April 18, 1946.

Macklin, Brown, Lenahan & Speer, by Leo Hanan, all of New York City, for Berwind-White Coal Mining Co.

Hatch & Wolfe, by Carver Wolfe, all of New York City, for Cities Service Oil Co.

Burlingham, Veeder, Clark & Hupper, by Chauncey I. Clark, all of New York City, for Fred B. Dalzell.

Foley & Martin, by Christopher E. Heckman, all of New York City, for Olsen Water & Towing Co.

BONDY, District Judge.

On January 12, 1943, the barge "Eureka No. 91," owned by Berwind-White Coal Mining Company, while in tow of the tug "Perth Amboy No. 2," owned by Fred B. Dalzell, was sunk in a collision with the steam tanker "Cities Service Kansas," claimed by Cities Service Oil Company. Thereafter Berwind-White Coal Mining Company brought suit to recover damages for the loss of its barge "Eureka" against the "Kansas" and the "Perth Amboy" and the tugs "Revere" and "Pentucket" which were assisting the "Kansas". Cities Service Oil Company, owner of the "Kansas," impleaded Dalzell Towing Company, Inc., owner of the "Perth Amboy" and brought a cross-suit against that tug and her managing owner, Fred B. Dalzell, for damages sustained by the "Kansas."

The suits were consolidated for the purpose of the trial. It was conceded at the trial that the libellant Berwind-White Coal Mining Company was entitled to recover damages jointly against the "Perth Amboy" and "Kansas" and their owners or at least against one of them and her owner, and the suit against the helper tugs "Revere" and "Pentucket" was discontinued.

As the "Perth Amboy" with the "Eureka," the port hawser barge in a tow with five other empty barges, was proceeding southwesterly in the Arthur Kill, between Staten Island and New Jersey, and approaching a bend in the channel between the Goethals Bridge and Gulfport, the "Kansas" assisted by the tugs "Revere" and "Pentucket" was approaching the same bend from the south. At the bend, New Jersey lies to the northwest of the channel and Staten Island to the southeast. As the "Perth Amboy" and "Kansas" approached one another they exchanged timely one-blast signals for a port to port passing.

Witnesses for the "Kansas" testified that the tow consisted of six barges in three tiers with two barges in each tier, on a hawser 300 feet in length, that the distance from the stem of the "Perth Amboy" to the stern of the rear barges was about seven hundred feet, that the "Eureka" was in the second tier and was not the hawser barge, that the collision took place south of the bend on the Staten Island side of the channel, east-

erly of its center line, that as the "Perth Amboy" was heading and angling from the Staten Island shore towards the Jersey shore, the tow of six barges became uncontrollable in the strong ebb tide and northwest wind and drifted southerly until the port side of the "Eureka" struck the bow of the "Kansas," that the engines of the "Kansas" had been in reverse for a few minutes before the collision and that the "Kansas" was not making any headway at the time of the collision.

The testimony of witnesses called on behalf of the "Eureka" and "Perth Amboy" and the weight of credible evidence, however, clearly establishes that the hawser was only about ninety feet long, that the tow consisted of six barges in only two tiers with three barges in each tier, that the tug and tow were only about 388 feet in length, that the channel was about 425 feet in width, that the collision took place before the "Perth Amboy" had made the turn in the bend and after the "Kansas" had reached the bend, that it took place westerly of mid-channel and close to the Jersey shore, and that the "Kansas" after reaching the bend, instead of turning to keep on her starboard side of the channel, kept her course heading northerly towards the Jersey shore until caught by the ebb tide flowing westerly which caused her to sheer suddenly into the "Eureka" westerly of mid-channel.

The story told by these witnesses was corroborated to a large extent by some of the witnesses called by the "Kansas." Geitzler, a disinterested witness, who was master of another tug, the "Celtic," the master of the "Pentucket" who was acting as the pilot of the "Kansas," the mate of the "Pentucket" and a member of the crew of the "Kansas" testified that the collision took place to the westward of mid-channel. The third mate of the "Kansas" tesified that the "Perth Amboy" was close to the Jersey shore. The acting pilot of the "Kansas" testified that the tow was in two tiers with three boats in each tier. Geitzler testified that the "Kansas" was headed towards the Wire Works' dock on the Jersey shore, that she was off the center line of the channel and that she was not following a mid-channel course.

The acting pilot of the "Kansas" and the mate of the "Pentucket" testified that the tide sets up towards the Jersey shore, that the "Kansas" was off her course and that she sheered to port.

The third assistant engineer of the "Kansas" testified that at 5:12 her engines were put full speed ahead, at 5:19 slow ahead, at 5:19½ full astern, that the chief engineer and first assistant engineer came into the engine room right after the full astern order was given, that the throttles were full astern when they came down and that the first assistant engineer stated: "We have hit a barge, or had a collision or something." The master of the "Kansas" testified that he left the dining room immediately after the danger signal was heard by him and ran to the bridge, arriving there after the collision had taken place, indicating that the accident happened within a very short time after any danger signal was sounded.

It does not appear that the "Kansas," loaded and bucking the tide and knowing that the tug with the tow of large barges had the tide underfoot and could not stop, could not have held back or that she did not have sufficient clear water between the end of the tow and the Staten Island shore to enable her to pass the tow port to port, whether the tow was only angling toward the Jersey shore after passing the railroad bridge or straightened out along the Jersey shore.

■ The court accordingly finds that the "Kansas" was at fault in that she failed to keep to her own starboard side of the channel in violation of the narrow channel rule, in that she failed to comply with her signal for a port to port passing and in that she failed to stop or reverse in time to avoid a collision when the possibility of same should have been anticipated by her. See The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126; The Quogue, 2 Cir., 47 F.2d 873.

■■ The "Kansas" did not sustain its burden of establishing fault on the part of the "Perth Amboy" imposed upon her in view of these faults on her part and in view of her sudden sheering into contact with the "Eureka." The sheering in itself

104

raises the presumption that the "Kansas" was not being properly navigated. See Royal Mail Steam Packet Co. v. Companhia De N.L.B.,D.C., 50 F.2d 207, affirmed 2 Cir., 55 F.2d 1082, certiorari denied 287 U.S. 607, 53 S.Ct. 11, 77 L.Ed. 528; The Australia, 6 Cir., 120 F. 220, 222.

■ The tug was not at fault for using the Staten Island draw of the railroad bridge notwithstanding the narrow channel rule. It is quite customary for tows traveling southerly to use the easterly draw of the railroad bridge. The draw was about 1500 feet from the place of collision. It was reached by the "Perth Amboy" five or ten minutes before the collision. There is no evidence that the "Kansas" was seen when the "Perth Amboy" was proceeding through the Staten Island side of the draw. The master of the "Perth Amboy" therefore was justified in concluding that he could safely use the Staten Island draw and get back to his starboard side of the channel after he had passed through the bridge without interference with any navigation by others. Libellant accordingly is not deprived of its right to recover for that reason. See The Eugenia Moran, 2 Cir., 58 F.2d 170; The Lake Savus, 1924 A.M.C. 652.

The Berwind-White Coal Mining Company accordingly is entitled to a decree against the tanker "Cities Service Kansas" and the cross-libels against the tug "Perth Amboy No. 2" and its owner are dismissed.