PETITION OF DIESEL TANKER A. C. DODGE, Inc., owner of THE motor vessel A. C. DODGE, and Spentonbush Fuel Transport Service, Inc., for exoneration from or limitation of liability, Petitioners-Appellants and Cross-Appellees,

J. M. Carras, Inc., Claimant-Appellee and Cross-Appellant,

Frances E. Elliott, Administratrix of the Estate of John D. Elliott, Deceased, Claimant-Appellee.

No. 344, Docket 23971.

United States Court of Appeals Second Circuit.

Argued May 8, 1956.

Decided June 7, 1956.

Foley & Martin, New York City, for petitioners, Christopher E. Heckman, and John H. Hanrahan, Jr., New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, MacDonald Deming, James M. Estabrook, Gordon W. Paulsen, Richard G. Ashworth, New York City, of counsel, for claimant-appellee and cross-appellant J. M. Carras, Inc.

Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., Greenhill & Greenhill, New York City, for claimant-appellee, Frances E. Elliott as Administratrix of the Estate of John D. Elliott.

Before CLARK, FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

The Dodge, as a result of a collision with the Michael, exploded, burned and sank. The owner of the Dodge instituted a limitation proceeding. Among the claimants were the owner of the Michael and the administratrix of the Master of the Dodge who lost his life in the disaster. The facts are fully stated in the opinion of the trial judge, reported in D.C., 133 F.Supp. 510. We think his findings were not "clearly erroneous."[1]

The owner of the Dodge appeals, asserting that the judge erred in holding the Dodge to blame, and in allowing recovery to the administratrix of the Dodge's Master.[2] The owner of the Michael concedes that the judge correctly held her to blame, but cross-appeals, arguing that the owner of the Dodge was not entitled to limitation of liability because the Dodge, to the knowledge of her owner, violated the manning stat-

---

1. Among the findings are these:

The Michael blew a one-whistle signal to the Dodge for a port passing. The Dodge answered with a one-blast acceptance "while the vessels were yet far enough apart to safely effect such a passing. After an interval of about one and one-half minutes, the Michael blew a two-blast signal (without reducing her speed) for a starboard passing. The Dodge did not answer that signal, nor did she blow a danger signal. Within about one minute or slightly less, the Michael blew a one-blast signal for a port passing, and in less than a minute the Michael ran down the Dodge and sank her. The Michael did not blow a danger signal at any time."

Originally the judge concluded: "The Dodge was found at fault for having failed to blow a danger signal *and stop* immediately upon the sounding of the two-blast signal by the Michael, and that fault contributed to the disaster." [Emphasis added.] On motion of the Dodge, the judge deleted the words "and stop." He explained that "there is no evidence in the case concerning the engine move-

ments of the Dodge." Thus we have no finding that the Dodge either did or did not stop.

2. Although the Dodge was a total loss, its owner has a substantial financial interest. The owner, in its brief, states the following: "Its claim against the Michael for the total loss of the Dodge is pending in the District Court of Maryland, where *in rem* jurisdiction was obtained (cf. related decision, 2 Cir., 218 F.2d 911). As under the trial judge's decision, which holds the Dodge and the Michael both to blame, there will be an equal division of all damages, both the Michael's and the Dodge's. Therefore the effect of his decision is to permit the Michael in the Maryland action, where she is a defendant, to offset one-half of her damages against one-half the Dodge's. Any balance in her favor collected by the Dodge in that suit against the Michael will be surrendered in the instant proceeding and will become the Dodge's limitation of liability fund for the benefit of other claimants. The Dodge's value was in the million dollar range."

utes,[3] and that this violation contributed to the collision.

■ 1. The Dodge argues that the judge erroneously held the Dodge at fault for not sounding a danger signal in violation of Article 18, III of the Inland Rules, 33 U.S.C.A. § 203, which reads: "If, when steam vessels are approaching each other, either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same by giving several short and rapid blasts, not less than four, of the steam whistle." The Dodge contends that Rule III is inapplicable here because the evidence does not show, and the judge did not find, that the Dodge failed to understand the Michael's course when the latter sounded her two whistle signal. We rejected such an interpretation of the Rule in The San Simeon, 2 Cir., 63 F.2d 798, 800, 801, where we said, per Judge Learned Hand: "It seems to us that with every allowance the navigation of the Commercial Mariner will not pass muster. She ought to have blown an alarm as soon as she got the San Simeon's signal (article 18, Rule III, Inspector's Rule I); we are also disposed to think that she ought to have stopped and backed. * * * We hold the Commercial Mariner for failing to answer the double blast with an alarm. As to this fault, it is indeed true that the Commercial Mariner was not in doubt as to the San Simeon's intention, and, reading the rule literally, that is the only occasion for the danger signal. But a fortiori when the proposed navigation is plainly impracticable, the ship should blow. The Bergen, D.C., 108 F. 555, affirmed, 2 Cir., 128 F. 920. It is indeed impossible to say that this would have changed the result, but the fault being the breach of a rule, the Commercial Mariner must satisfy any doubts. Such a signal would have told the San Simeon that the Commercial Mariner thought her navigation dangerous; not being followed by a backing

signal it ought to have told her that she was coming on. It is impossible to say what she would have done in this predicament, but it must have appeared to her that the Commercial Mariner did not mean to pass under her stern. It is quite possible that she would have slackened speed, as she did when the situation developed more completely. A very little change would have sufficed; the Commercial Mariner needed only about seven seconds to escape. Such speculations the law throws upon the vessel which fails in her duty. It seems to us enough to charge her." After indicating that the Commercial Mariner was also at fault because she did not stop and back, Judge Hand added: "We do not however find it necessary to put the result upon a failure to stop and back, because the delay in sounding an alarm is enough."[4] See also Merritt, Chapman & Scott Corporation v. Texas Co., 2 Cir., 98 F.2d 719, 721.

■ 2. The Dodge further contends as follows: "A danger signal by the Dodge at the time of the Michael's two whistle signal would have been inappropriate if in fact there was no danger; on the other hand, a two whistle signal by the Dodge at a time when the Michael was preparing to pass the Dodge port to port might have created serious consequences on the Michael, if the Michael's two blasts were intended for someone else, as the Dodge captain might well have thought, at least until investigation proved otherwise. Consequently if the Dodge did not blow any whistle signals after the Michael's two, it may be that the decision not to do so was the deliberate exercise of the Dodge's navigator's best judgment in the existing circumstances."

But even assuming that the evidence sufficiently disclosed the presence of other vessels or a basis for a reasonable belief by the Dodge that they might have been present, we think the contention untenable. In National Bulk Carriers v.

---

3. 46 U.S.C.A. §§ 222, 223, 235, 673.

4. Accordingly, the decision did not turn on the ground of the Commercial Mariner's failure to stop and back.

United States, 2 Cir., 183 F.2d 405, 408, we said: "Appellee does not now seriously, nor could it plausibly, press upon us, as justification for the master's failure to sound a one-blast signal, his explanation made at the trial that he did not do so for fear of giving rise to confusion and starting the Rutgers Victory 'on some unprudent course which would make the situation more serious.' The Rules do not admit of violation for fear of causing confusion. Cf. A. H. Bull Steamship Co. v. United States, 2 Cir., 34 F.2d 614." See also Merritt, Chapman & Scott Corporation v. Texas Co., 2 Cir., 98 F.2d 719, 721: "While we should not care to commit ourselves to the doctrine that it can never be a fault to blow a danger signal, we are at a loss to think of an occasion when it would be. The books do not contain a whisper that it ever is * * *."

■ 3. Since the Dodge violated the statute, there is no merit in the suggestion that it is not certain that a danger signal would have enabled the Michael to avoid the collision. For the Dodge had the burden of proving that by no possibility did the violation contribute to the collision. See The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148; The San Simeon, supra. The Dodge did not bear this burden: On the basis of the finding as to the time which elapsed after the Michael's two-blast signal, we cannot say that the collision would not have been averted if the Dodge had complied with the Rule. The judge therefore correctly concluded, "The Dodge was at fault for having failed to blow a danger signal immediately upon the sounding of the two-blast signal by the Michael, and that fault contributed to the disaster."

■ We think the Dodge's fault was not so minor in character as to justify the application of the minor-fault doctrine. The resultant division of damages, half-and-half, is irrational and unjust. Guided by the The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586, we have held that the more rational doctrine of comparative negligence applies in the case of personal injuries.[5] We cannot do likewise in a case like this.

■ 4. We see no reason to reject the judge's finding that, even assuming the Dodge was undermanned, there was "no causal relation between" the "undermanning and her navigation immediately prior to and at the collision." This disposes of the cross-appeal.

■ 5. The judge said that "nothing can be assumed concerning the physical condition" of the Dodge's master "with respect to fatigue or otherwise." On that basis, the Dodge contends that, if she was at fault, that fault was necessarily ascribable to her Master's negligence, so that his administratrix cannot recover from the Dodge. To make out this defense, the Dodge had the burden of proving the Master's negligence. The record, however, contains no affirmative evidence that the Master was responsible for the fault. For all that appears, quite legitimately, for any one of several reasons not too difficult to surmise, he may not have been on the bridge at the time. Consequently, the judge committed no error in not finding the Master negligent.

Affirmed.

HINCKS, Circuit Judge (dissenting in part).

I dissent but only as to the implications in Point 5 of the majority opinion as to the claim against Dodge for the death of its Master made by his administratrix. We have sustained findings that the only fault of the Dodge was failure to sound a danger signal and that this failure was not caused by undermanning. Further, as counsel for the administratrix say in their brief, the collision occurred during the Master's watch and he was the only pilot on board as the Dodge, in a narrow channel, was confronted by vessels approaching from an opposing direction. From these facts,

---

**5.** Ahlgren v. Red Star Towing & Transport Co., Inc., 2 Cir., 214 F.2d 618, 620–621 and cases there cited.

378

I think a conclusion was imperatively required that the Master, who was either on the bridge or should have been there, was responsible for the only fault on the part of the Dodge which was proved. On such a conclusion, the claim made by the administratrix should have been dismissed. Instead, without express holding that the Dodge was liable to the administratrix, by its decree the court referred the claim (with others) to a Commissioner for a report as to its "amount, validity, and priority." In so doing, I think the court unnecessarily deferred to a later stage a final ruling which should have been incorporated into its interlocutory decree.