## THE JUMPING JACK.

### THE PINTA.

### ROSS v. TUCKER.

### No. 148.

Circuit Court of Appeals, Second Circuit.
Feb. 1, 1932.

Reversed, with directions to dismiss libel.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The Jumping Jack, a sea skiff thirty-two feet long, with two men on board left Fisher's Manor about 4 o'clock, daylight saving time, on the morning of September 16, 1929, bound for the Black Buoy off Gardiners Island. There was no wind, and the weather was clear, but she got off her course and into shallow water. After touching ground once, soundings were taken and the anchor with from ten to fifteen fathoms of cable was put over. Then her electric riding light, which was on a small steel rod that extended about a foot above the top of her cabin, was turned on, and the men went to bed. The Jumping Jack swung to her anchor in an ebb tide, and when she did so was in fact in about the center of what is known as Promised Land Channel, although it is not certain that the men aboard knew that. The switch on her running lights was known to be corroded and to have previously caused trouble, but her riding light had a separate switch which was in good condition so far as then known.

About twenty minutes after 4 that morning the Pinta, an oyster schooner rerigged for use as a fishing boat, about sixty feet long with a beam of sixteen or seventeen feet, left Edwards Brothers Dock at Promised Land to go through the channel and around Montauk Point to the ocean side of Long Island to fish. She had aboard her captain, an engineer, and two deck hands. The captain was in the pilot house at the wheel, one deck hand was in the bow as a lookout, and the other on the port side of the pilot house to relay signals from the lookout to the captain because the semi-Diesel engine with which the Pinta was equipped made so much noise that it was difficult for the captain to hear the lookout. The Pinta was making about six miles an hour down the channel when suddenly the lookout saw the Jumping Jack hard under her bow. The Pinta's engines were at once reversed, and she was put hard astarboard. She did not, however, avoid hitting the starboard side of the Jumping Jack's stern, which immediately began to sink stern first and soon took the ground with from four to six feet at her bow above water. She so remained until towed into dock by the Pinta later in the morning. The

two men aboard her jumped into the water and were picked up by the Pinta when she came back as soon as she could turn.

There was no evidence to show that the riding light of the Jumping Jack continued to burn for any definite time after the switch was turned on, and all the evidence from the Pinta was to the effect that there were no lights on the anchored boat before the collision. The trial judge so found. We think that fact is amply supported by the evidence and sufficient to account for the collision. He also found that the Pinta was at fault for not seeing the Jumping Jack in time to prevent the collision, and divided the damages. The Jumping Jack did not appeal. A rather curious result of the collision was that as soon as the Jumping Jack was hit all her lights came on. All witnesses agree that this happened, but none could explain just why they did.

Finding the Pinta at fault under the circumstances above outlined we think was error. Even in clear moonlight it would certainly have been difficult to make out on the water a low lying object like the skiff. Moreover, the moon had set nearly half an hour before, and it was about two hours before sunrise. Although her hull was white, her stern, and that was toward the Pinta, was varnished and dark. The Pinta was moving slowly, had proper lights, a lookout, and was going down a channel where she of right could be and could navigate with reason to believe that any boat at anchor in the channel would show a riding light. See article 11 of the Inland Rules (33 USCA § 180). Compare The O'Brien Brothers (C. C. A.) 258 F. 614, 616. She infringed none of the rules, took all reasonable precaution to avoid collision, and should have been exonerated.

Decree reversed, with directions to dismiss the libel, with costs.