## THE CORNELIUS VANDERBILT.
## THE WATUPPA.
## THE HEMPSTEAD.
## THE ESSEX NO. 6.
### Nos. 254–256.

Circuit Court of Appeals, Second Circuit.
June 9, 1941.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Adrian J. O'Kane, both of New York City, of counsel), for Red Star Towing & Transportation Co.

Mahar & Mason, of New York City, (Frank C. Mason, of New York City, of counsel), for Essex Transp. Co. and McCarren Towing Line, Inc.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant, New York Trap Rock Corporation, filed a libel to recover damages from the tug Watuppa and the tug Hempstead for injuries to its scow Cornelius Vanderbilt, in tow of the Hempstead, arising out of a collision in the East River near Hunts Point between the Vanderbilt and the oil barge Essex No. 6 in tow of the Watuppa. The libellant Essex Transportation Company likewise filed a libel to recover damages from the tug Hempstead arising out of a collision in the neighborhood of Hunts Point between the oil barge Essex No. 6, belonging to the libellant, and the Hempstead, which impleaded the tug Watuppa. The Red Star Towing & Transportation Company also filed a libel against the Watuppa for damages occasioned by the last-mentioned collision. In the first two libels the Hempstead was held solely responsible for the damages to the Vanderbilt and the Essex No. 6, respectively, and the third libel, filed by the owner of the Hempstead, against the Watuppa for damages to the former, was dismissed because the Hempstead was solely at fault. The owner of the Hempstead has appealed from all three decrees which in our opinion were right and must be affirmed.

On August 17, 1938, the Watuppa left East 138th Street in the Bronx about 2 A. M. bound for New London, Connecti-

cut, having the oil barge Essex No. 6 in tow on a 60-fathom hawser. Her course was east by south in the channel to the north of Rikers Island past Hunts Point in the direction of College Point Light. The wind, which was very light, was about southeast; the weather clear and the tide high water slack. Her speed was four knots. The Watuppa showed three white towing lights on the foremast, one white light on her aftermast and red and green side lights. The Essex No. 6 showed two white electric lights, one forward and one aft. When about 300 feet west of Hunts Point Light the navigator of the Watuppa observed a tug and tow (which afterwards proved to be the Hempstead and the scow Vanderbilt at the Red Star stakeboat, which was about 475 yards easterly of Hunts Point Light. The Hempstead was then engaged in making up her tow of three loaded trap rock scows in tandem at the stake-boat. The scow Vanderbilt was the head scow, with two 40-foot hawsers running from her to the Hempstead, and behind her were the scows Sterling Jr. and Ferber close coupled. When the Watuppa reached a position in the channel abreast of Hunts Point Light she and her tow were on the north side of a narrow channel in violation of Article 25 of the Inland Rules of Navigation, 33 U.S.C.A. § 210. The usual course of the Hempstead and her tow, which were bound for Flushing, Long Island, lay across the fairway, and that of the Watuppa and her tow. The trial judge said in his opinion that both the Hempstead and the Watuppa sighted each other before the Hempstead left the stake-boat. There is no question that this was true of the Watuppa, and the master of the Hempstead had so testified before the inspectors. But, in any event, he admitted at the trial that he saw the Watuppa and her tow when the Watuppa was abreast of Hunts Point and the last scow in his tow was just leaving the stake-boat. The deckhand of the Hempstead at the time she started from the stake-boat with her tow was on the stern deck of the tug and there was no lookout posted on the vessel.

After taking on her three barges at the stake-boat the Hempstead was apparently tailing in the tide toward the southwest but when she had started out, and noticed the Watuppa coming on through the channel, she rounded to port in order to allow the Watuppa and her tow to pass. She then

intended to go under the stern of the Watuppa's tow and proceed across the main channel on her way to Flushing. She had, however, come out too far to accomplish this manoeuvre and in attempting to swing her tow around to the east a collision occurred between her barge Vanderbilt and the Essex. The effect of this collision was to swing the Hempstead to starboard into the path of the Essex so as to bring about a second collision between the Essex and the Hempstead which resulted in injury to the Hempstead, for which damages were sought in the libel filed by her owner, the Red Star Towing & Transportation Company.

As we have already pointed out, the Hempstead was aware of the approach of the Watuppa and her tow on a long hawser at least as soon as the Watuppa had come abreast of Hunts Point Light, if not some time earlier. But instead of holding back she swung to port, which had the tendency to pull the Vanderbilt and the rest of her tow farther to starboard and out into the narrow channel and bring about the collision between the Vanderbilt and the Essex. The master of the Hempstead plainly was in too great a hurry and misjudged the position of the Watuppa and her tow. When he was asked why he could not have timed things better so as just to continue his course and "not * * * to make any swing at all", he answered: "The idea was to get started from the stake-boat and get over to Flushing." He was also asked whether if he had waited a few minutes longer he could not have made a direct course across without making this swing and replied: "I wanted to get over—I had other work to do."

The Hempstead attributed the collision to a sudden sheer by the Essex which was disputed by the Watuppa's witnesses and which the trial judge found did not occur. To show that there was no sheer, the Watuppa produced witnesses who testified that a sheer great enough to account for the collision could not have occurred because of so-called "skegs" which had been installed on the stern of the Essex. But the capacity of skegs to prevent pronounced sheering was a matter in dispute and we think there was evidence justifying the finding that there was no sheer in fact, whatever may have been the reason for its absence.

The trial court held the Hempstead solely at fault for unnecessarily crowding the

Watuppa and Essex, and swinging her barge into the latter's path. While it found that the Watuppa had navigated on the wrong side of a narrow channel, it concluded that her position did not occasion the disaster because the Hempstead could have avoided the collision by simply holding back in season. We think the libels involved mere questions of fact and that the issues of fact were rightly disposed of.

The Hempstead was aware of the approach of the Watuppa and her barge in time to avoid the collision and, if she was not, should have seen them but for her neglect to maintain a proper lookout. She had the Watuppa on her starboard hand and, as her master conceded, was bound to give the latter the right of way. The Watuppa, however, having a tow on a long hawser, difficult to manage in dangerous waters, could not readily swing her barge to the starboard of its position in the channel. Though each vessel neglected to blow passing signals, as required by the rules, and the Watuppa was on the wrong side of the channel, the outstanding fact is that the Hempstead had the last clear chance to prevent a collision by the exercise of ordinary care at a time when the Watuppa had the right of way and was not in a position to swing her tow away from the Hempstead's barges in time to avert disaster. Instead of holding back, the Hempstead took the risk of coming on and then attempting to swing her tow to port—a difficult manoeuvre in a narrow dangerous channel which failed of success.

The decrees are affirmed, with costs to the appellees.