**Petition of Frank H. ROBERTSON for Exoneration from and Limitation of Liability.**

No. 57–51.

United States District Court
D. Massachusetts.
May 26, 1958.

---

1. See comment in Fiduciary Review, December 1950, Page 4.

William T. Conlan, Boston, Mass., for petitioner.

Thomas L. McCormack, McCormack & Franklin, Jamaica Plain, Mass., for claimant Atlas.

John J. McNaught, Esdaile, Morris & McKenney, Boston, Mass., for Blais, Grover Pelletier.

Robert P. Malone, Boston, Mass., for Menier & Lehmann.

ALDRICH, District Judge.

This is a petition for exoneration and limitation brought by the owner of the Winem II, a forty-foot twin-screw cabin cruiser that collided with the motorboat We Too in midafternoon on Massachusetts Bay northerly of Boston Lightship on July 27, 1957. The We Too was a party boat carrying 29 passengers, and had been fishing. The collision caused the We Too to go down in a matter of minutes, except for a few feet of the bow. Most of the persons aboard were thrown into the water. All were rescued by the Winem II, which was little damaged. Claimants in the limitation proceedings are the owners of the We Too, and a number of her passengers, at least one of whom suffered personal injury. There is also pending a libel and a cross libel between the two vessels. A joint trial was held on all issues except damages.

The Winem II was proceeding on automatic pilot. The only two persons aboard were the owner, Robertson, and the paid skipper, Morrison. Whoever was in charge, a matter subsequently to be considered, was grossly inattentive. Robertson testified that he was below and never saw the We Too until after the collision. Morrison testified that he was

at the wheel, but admitted that the We Too was only 18 feet away when he saw her. The Winem II was proceeding northerly at about nine knots. Concededly she never varied her course or speed, or sounded any signals, and struck the We Too on the port counter about 9 feet forward of the transom.

The We Too was proceeding westerly at about five knots. She was in charge of a licensed captain, one deRochemont. When they abandoned fishing and started for home deRochemont had turned the wheel over to Lehmann, one of the owners, and gone below. He remained below for several minutes, until the collision. I have no criticism of deRochemont for this action.

Lehmann was 65 years old. He was accustomed to the water, but ignorant of many fundamental principles, and, apparently, obstinate. His deckhand, one Jackson, summed this up at the Coast Guard hearing, probably inadvertently, when he testified as follows:

> "Q. Did you notice any course alteration by your vessel prior to the collision? A. We kept the same course.

> "Q. Are you certain? A. I am practically positive, knowing this gentleman, I know.

Lehmann saw the Winem II when she was a mile off. He also observed her particularly when she was 150 feet off, when Jackson called to him. He testified that he had noticed her from time to time in between. Lehmann continued on. Thereafter he gave several blasts on an automobile horn. The signal was not the correct one, but he testified that to him it meant he was coming through. It is true he had the right of way. Inland Rules, Art. 21, 33 U.S.C.A. § 206. But it was obvious that collision was imminent in a matter of seconds unless someone yielded, and not only was the Winem II

showing no signs of having observed him, but he could not even see anyone on deck. For Lehmann, with 29 passengers on board, to continue across the Winem II's bow under such circumstances, making no move except to step up the throttle (of an unlively boat) and swing his stern a little, at the last instant, was a clear disregard of even minimum precautions. The Benalla, D.C.S.D.N.Y., 45 F.2d 864; The Senator Rice, 2 Cir., 223 F. 524; cf. The George S. Shultz, 2 Cir., 84 F. 508; The Hercules, D.C.D.S.C., 51 F. 452, 454. In The Hercules the court said, at page 454, "The duty is to avoid the collision, by observing the rules primarily, by departing from them, if necessary, to avoid danger." "Where property and life are at stake, neither party should insist upon persisting in a course which is likely to result in disaster when the delay of a few moments will insure the safety of both." The Senator Rice, supra, 223 F. at page 527. Clearly Lehmann could have turned, or merely slowed, with no injury to anyone except momentary annoyance to himself. I hold that he should have taken some such action.[1]

I find both vessels at fault. The petition for exoneration is denied, and in the libel and cross-libel decrees will be entered dividing the damages.

Robertson's petition to limit raises another issue. The Winem II was fully found, sound and seaworthy. But since Robertson was aboard he has the burden of showing he did not participate in, and was in no manner privy to, her negligence. Robertson testified that he was below, with Morrison in full charge. Morrison corroborated him. Against this there was testimony from Jackson that the man he saw by the Winem II's wheel as they were approaching was bald with a light shirt, which described Robertson and not Morrison, and was standing bent forward over the companionway.

---

1. The obligation to do this is explicit in the International Rules. Rule 21, 33 U.S.C.A. § 146e. The above cases show it is implicit in the comparable Inland Rule, Art. 21, 33 U.S.C.A. § 206. See Art. 29, 33 U.S.C.A. § 221. It may be noted that Lehmann did not know one set of rules from the other, and knew less than nothing about right of way.

The collision caused Robertson to break three ribs. At the Coast Guard hearing he testified he had been below, and when asked if three minutes, said, no, two minutes, and that he was eating a glass of jelly in the galley, which was by the hatchway. On the stand he testified that he was below four or five minutes, and that after eating the jelly he had gone forward and was packing his bag. It seems to me if someone broke his ribs in a collision he would know where he was in the boat, and whether he was eating or packing. I am disposed to accept Robertson's Coast Guard testimony, and not Jackson's identification. I find it impossible, however, to accept Morrison's entire testimony that he was standing at the wheel looking straight ahead, discovering the We Too only when she was 18 feet away. In view of the relative speed of the vessels, and the place the We Too was struck, when she was 18 feet away half of her length had already crossed the Winem II's bow. If I accept the 18 feet I cannot accept the statement Morrison had been looking straight ahead. However, the 18 feet makes sense, or otherwise he would have had time to attempt some maneuver, and it is clear he did not.

If Morrison was not looking straight ahead, the question arises what was he doing, and, a more serious question, why did he not want to disclose it? I conclude as follows: that Robertson was in the galley; that Jackson did not see him leaning down over the companionway, but did see someone so doing; that it was Morrison; that the two were conversing, and that this had been going on for an appreciable length of time. Under these circumstances Robertson would know that Morrison was not attending properly to the navigation of the vessel—not because he was talking, but because of the posture he was in. This conclusion seems the most logical I can think of. It explains why Morrison did not see the We Too until he was on top of her, and also why he testified to looking straight ahead, when he could not have been, and Robertson's moving himself, between the Coast Guard hearing and the trial, as far as possible from the hatch.

While I recognize that the limitation statute is not to be applied with a grudging hand, it was never meant to excuse negligence of the owner. Robertson was not away from contact with the scene of operation, The Maria and Elizabeth, D.C.D.N.J., 12 F. 627; Cusumano v. The Curlew, D.C.D.Mass., 105 F.Supp. 428, nor a person ignorant in nautical matters, dependent upon others more skilled. Petition of Liebler, D.C.W.D. N.Y., 19 F.Supp. 829. Doubtless, even though on board, if he had no reason to suppose otherwise, he could rely upon the competency of a person he had put in charge. But where he knew that this person had his eyes and his attention directed to the cabin rather than to the surrounding water, it seems to me he was privy to the fact that his vessel was proceeding without adequate lookout, the very factor which caused the collision. Cf. La Bourgogne, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973. The petition for limitation is denied.