**WASSON BARGE RENTAL CO., Inc.,**
**Plaintiff,**

v.

**The TUG CARRIE D, her engines, tackle, apparel, furniture, etc. and Mr. Calvin Devall, and the TUG ROBERT P. DOHERTY, her engines, tackle, apparel, furniture, etc. and Donahue Bros., Inc., Defendants.**

**Civ. A. No. 66–577.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 7, 1969.

---

934

James H. Daigle, New Orleans, La., for plaintiff.

John W. Hamilton, New Orleans, La., for defendants.

RUBIN, District Judge:

This is a ship collision case that lacks the usual cast of witnesses. Nowhere to be found are the two crews, each convinced of an opposite version of the facts. The entire record consists of the testimony of one witness, Harry Roberts. But counsel have no difficulty devising different interpretations of it.

On October 28, 1965, Roberts was relief captain on a sixty-five foot tug, the ROBERT V. DOHERTY. Just after midnight, October 28th, the tug was proceeding westward, properly lighted, in the Gulf Intracoastal Waterway west of Harvey, Louisiana, towing two empty barges. Another tow was following the DOHERTY, proceeding in the same direction. They were in a straightaway portion of the canal eleven miles long, and Roberts, who had come on watch at

midnight, knew a tow was approaching headed east. This, he later learned, consisted of the tug CARRIE D. WEST and one barge.

A dredge was working between the two oncoming tows on the south bank of the canal, and barges were moored 150 feet past the dredge parallel to the north bank. The dredge and the barges were properly lighted. One of the moored barges had broken loose at one end, and was secured only on the other end.

The DOHERTY was proceeding along the south bank. Unable to raise the approaching tow by radio, the DOHERTY continued on its course. Roberts blew a one whistle signal to pass the dredge, and received a passing answer. At this time the DOHERTY was about one-half mile east of the dredge, and the CARRIE D. was at least one mile west of it.

As the DOHERTY approached the dredge it became apparent that the end of the partially secured barge might drift into the channel. At this time, the DOHERTY could have come astern but did not.

The DOHERTY passed the dredge in midchannel, then pulled over toward the south bank to clear the loose barge. This maneuver put it on the side of the fairway that was on its port side. As the tug approached the moored barge, Roberts cut its speed from six miles an hour, to the minimum speed at which he could control his tow, but the tug's suction drew the free end of the barge into midchannel.

No passing signals were exchanged between the CARRIE D. and the DOHERTY. The CARRIE D. continued to proceed eastbound, but, by then, it was only a half mile away from the DOHERTY. After the DOHERTY had swung back to the south bank and was proceeding parallel to it, a bank suction caused the bow of its flotilla to swing out to midchannel. The drifting end of the partially secured barge was out in the channel, and, since the barge was 110 feet long, there was only a narrow passage for the DOHERTY along the south bank. Roberts saw that the CARRIE D. was not going to stop and blew danger signals. At this time, the CARRIE D. was about a quarter mile away. Roberts stopped, and, as he did so, the bow of the DOHERTY tow swung into the middle of the channel and the tug went into the bank. One of the barges in its tow, B–719, was struck by the CARRIE D. on its port bow.

The CARRIE D. never altered course, blew no signals, and answered no signals.

Wasson Barge Rental Company, the owner of the B–719, filed suit against both tugs and their owners. Donahue Bros., Inc., the owner of the DOHERTY, filed an answer and a third party claim against the CARRIE D. Calvin Duval, the owner of the CARRIE D., did not respond, and default judgments were entered in favor of Wasson and Donahue Bros. Duval was aboard the CARRIE D. at the time of the collision, but has since died, and no other witnesses aboard either barge have been located.

■ Navigation on the Gulf Intracoastal Waterway is governed by the Inland Rules of the Road. 33 U.S.C.A. § 154. John I. Hay Co. v. M/V DOROTHY I. SOUTHERN, E.D.La.1963, 221 F.Supp. 538. Article 25 of these rules, 33 U.S.C.A. § 210, provides, "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

■ "Violation of the narrow channel rule 'is, of course, a statutory fault, rendering the offending vessel liable, unless it is shown that the fault did not contribute'." Indian Towing Co. v. Tug WESLEY W, E.D.La.1967, 264 F.Supp. 892, 895. Article 25 requires only that a vessel "[i]n narrow channels * * * shall, when it is *safe and practicable*, keep to that side of the * * * mid-channel which lies on the starboard side of such vessel." (Emphasis supplied.) 33 U.S.C.A. § 210.

It was not safe or practicable for the DOHERTY to navigate any more to the starboard of the midchannel than she did for, had she done so, she would have hit the barges. By its very terms, there was no violation of the Narrow Channel Rule.

But, beyond that, the DOHERTY was in the south side of the channel in ample time for the CARRIE D. to have yielded to her. The CARRIE D. apparently had no lookout. It neither stopped, nor slowed, nor signalled.

The presence of the "swinging barge" prevented the DOHERTY from moving her tow back to the north side of the channel, and created a situation in which the CARRIE D., with only one barge, being more maneuverable, was required to make a reasonable effort to avoid the danger of collision. *Cf.*, Crawford v. Indian Towing Co., 5 Cir., 1957, 240 F.2d 308.

The CARRIE D.'s master should have known that the DOHERTY tow was in a position of danger from which, unaided, she could not extricate herself. The CARRIE D. had the last clear chance to avoid the collision. We conclude therefore, as the court did in Crawford v. Indian Towing Co., 5 Cir., 1957, 240 F.2d 308, 311: "Whether this be called an application of the doctrine of last clear chance or the rule of causation, makes little difference. Where, as here, an act is negligent, but is not the proximate cause of the injury, it is merely a condition. As such it is not a basis of liability." See also, Cenac Towing Co. v. Richmond, 5 Cir., 1959, 265 F.2d 466, 471. This is also the rule in the Second Circuit, The Sanday, 2 Cir., 1941, 122 F.2d 325; The Cornelius Vanderbilt, 2 Cir., 1941, 120 F.2d 766, 768.

Failure to keep a proper lookout is a statutory fault and imposes on the guilty vessel the burden of proving not only that her failure did not contribute, but that it could not have contributed, to the collision. The Madison, 2 Cir., 1918, 250 F. 850, 852; The Anna W, 2 Cir., 1912, 201 F. 58, 60–61. In The Albert Dumois, 1899, 177 U.S. 240, 20 S.Ct. 595, 44 L.Ed. 751, the Supreme Court said that the failure to keep a lookout raises "a presumption against her." See also, The Pennsylvania, 1873, 19 Wall (86 U.S.) 125, 136, 22 L.Ed. 148 and Indian Towing Co. v. Tug Wesley W, supra, at 264 F.Supp. at 895 n. 5.

Not only was the CARRIE D. at fault for plowing on when she should have taken avoiding action or, in the alternative, for failing to see what she should have seen, but she is also at fault for failing to heed the DOHERTY's danger signals.

The plaintiff charges that the Tug ROBERT P. DOHERTY was at fault for failing to obey the Rules of Good Seamanship because prudence should have required the DOHERTY to stop before passing the dredge. But the dredge had answered passing signals, and had assented to the passage; this was a representation that passage was not obviously dangerous. Griffin on Collision (1949), p. 213. In addition, the CARRIE D. should have heard these signals and been fully aware of the maneuver ahead of it.

The CARRIE D. was not at the dredge when the DOHERTY was passing, and, at that time, there was no danger in passing. The danger of collision occurred only after the CARRIE D. approached without heeding either the DOHERTY's plight or her two danger signals.

Accordingly, I conclude that the fault of the CARRIE D. WEST was the proximate cause of the collision and that the plaintiff should have a judgment for its damages in full against that vessel and its owner. The demands against the ROBERT V. DOHERTY are rejected. The plaintiff will prepare a proposed judgment accordingly. This opinion will serve as the Court's findings of fact and conclusions of law in accordance with Rule 52(a) F.R.Civ.P.