THOMAS F. O'SHAUGHNESSY *vs.* HARRY C. BESSE & others.[1]

Plymouth.    April 17, 1979. — June 8, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Admiralty. Negligence*, Vessel, Mooring. *Practice, Civil*, Judgment notwithstanding verdict.

In an action for damages sustained when the plaintiff's boat collided with a float in the mooring area of a harbor, the defendants could not be found liable on a theory that they violated 33 U.S.C. § 409 (1976), making it unlawful to tie up or anchor vessels in navigable channels in such a manner as to obstruct the passage of other vessels, where the jury's finding that the float was not in the channel but "at the channel" was amply supported by the evidence. [730]

---

[1] Edward K. Dexter and the town of Wareham.

In an action for damages sustained when the plaintiff's boat collided
with a float tied to a mooring, the defendants could not be found
liable on the ground that they failed to comply with the require-
ments of 33 U.S.C. § 180 (a) (1976) since that statute applies only to
craft at anchor and is not applicable to a moored vessel. [730-732]
In an action for damages sustained when a boat collided with an
unlighted float tied to a mooring by the defendants, the judge prop-
erly allowed defendants' motion for judgment notwithstanding the
verdict where, on the evidence, it was just as reasonable to suppose
that the cause of the collision was the manner in which the boat was
navigated as it was to suppose that any conduct of the defendants
caused the accident. [732-734]

TORT. Writ in the Superior Court dated July 10, 1968.
The case was tried before *Abrams*, J.
*Francis J. Lynch* for Thomas F. O'Shaughnessy.
*Marcus E. Cohn* for Harry C. Besse & another.
*Charles R. Desmarais* for the town of Wareham.

KASS, J. After the jury brought in a special verdict
finding that the negligence of the defendants contributed
to the marine accident in which the plaintiff was injured,
the trial judge allowed a motion for judgment notwith-
standing the verdict. Mass.R.Civ.P. 50 (b), 365 Mass. 814
(1974). There was no error.

When acting on a motion for judgment notwithstand-
ing the verdict, courts are limited to the question wheth-
er, when all the evidence is considered most favorably to
the plaintiff, "the evidence is such that, without weighing
the credibility of the witnesses or otherwise considering
the weight of the evidence, there can be but one conclu-
sion as to the verdict that reasonable men could have
reached." *Simblest* v. *Maynard*, 427 F.2d 1, 4 (2d Cir.
1970). *Posttape Associates* v. *Eastman Kodak Co.*, 68
F.R.D. 323, 331 (E.D. Pa. 1975), rev'd on other grounds,
537 F.2d 751 (3d Cir. 1976).[2] Nor may the court substitute
its judgment of facts for that of the jury. 9 Wright &

[2] Since Mass.R.Civ.P. 50(b) is the same as Federal Rule 50(b), we may
be guided by the construction which Federal courts have given the
corresponding Federal rule. *Martin* v. *Hall*, 369 Mass. 882, 884 (1976).
*Albano* v. *Bonanza Intl. Dev. Co.*, 5 Mass. App. Ct. 692, 693 (1977).

Miller, Federal Practice and Procedure § 2524, at 543-544 (1971). Smith & Zobel, Rules Practice § 50.6, at 203 (1977). These criteria are the same which apply to motions for a directed verdict. *D'Annolfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978). While conflicting evidence alone will not justify a judgment notwithstanding the verdict, *Fireman's Fund Ins. Co.* v. *Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1976), cert. denied, 429 U.S. 1053 (1977), a court may direct a verdict in a negligence case if "on all the evidence, it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable." *Bigwood* v. *Boston & No. St. Ry.*, 209 Mass. 345, 348 (1911). *Alholm* v. *Wareham*, 371 Mass. 621, 626-627 (1976).

With these standards in mind, we summarize the facts. At about 12:30 A.M. on July 13, 1967, on a moonless night, Richard J. Neary, with the plaintiff O'Shaughnessy as a passenger, was operating his speedboat inbound from the Cape Cod Canal to the Onset pier, looked for a friend at the pier, and, failing to find him, headed back toward the Onset channel. En route he collided with a float in the mooring area of the Onset inner harbor. Neary's boat hit the float at a speed of ten miles an hour (according to his testimony), and the force of the impact catapulted Neary and O'Shaughnessy into the water. Indeed, Neary's twenty-one foot double-planked mahogany inboard speedboat collided with the float with speed sufficient to cause the boat to jump the float and come to rest in the water on the other side of it. The speed limit in the Onset channel and in the Onset harbor was five miles an hour. O'Shaughnessy suffered injuries in the mishap.

Earlier the preceding day the harbormaster of Onset harbor, the defendant Dexter, and the harbor patrolman, the defendant Besse, had moved two eight-foot-wide floats, which were sixty feet long in the aggregate, from alongside the Onset pier to a mooring (the mooring marker was attached with chain to a 200-pound mushroom

anchor) in the mooring area. These floats, in their customary pier-side location, served as a dock for vessels which tied up for short intervals at the Onset pier. There were, in the mooring area, between thirty and forty boats moored approximately fifty feet apart. Besse and Dexter did not place any lights on the floats. The floats were constructed of two-by-ten inch beams over which planking was nailed to form a deck. Styrofoam provided flotation. The floats were unpainted, had a weathered shingle gray color, and protruded out of the water approximately ten to fourteen inches.

The jury, in its special verdict, found that the floats were not in the channel, but "at the channel."

1. As one of several grounds on which to find the defendants liable, O'Shaughnessy points to 33 U.S.C. § 409 (1976),[3] which in pertinent part provides: "It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft." When a ship at the time of collision is in violation of a statutory rule intended to prevent collisions, a rebuttable presumption arises that the violation was at least a contributing cause of the collision. *The Pennsylvania*, 86 U.S. 125, 136 (1873). *In re Wasson*, 495 F.2d 571, 579-580 (7th Cir.), cert denied, 419 U.S. 844 (1974). Since the jury, in its special verdict, found that the floats were not in the channel, the plaintiff's theory of liability on this score fails. The jury's finding was amply supported by the record, from which it is evident that the mooring to which the defendants attached the floats was located well past (by 355 feet) the last can and nun buoys which marked the channel and that the floats were not in the channel, but rather in the Onset harbor turning basin, which was an area where as many as thirty to forty craft were moored.

2. As an alternate basis for establishing the defendants' liability, the plaintiff urges 33 U.S.C. § 180 (a)

---

[3] Title 33 relates to "Navigation and Navigable Waters."

(1976), which, so far as relevant, provides: "Except as provided in subsection (c) of this section, a vessel under one hundred and fifty feet in length when at anchor shall carry forward, where it can best be seen, a white light in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least two miles."

Assuming, without deciding, that the floats were vessels for purposes of § 180, that statute applies only to craft *at anchor*. A mooring is a permanent location to which a vessel ties; an anchorage is a temporary location. The difference between riding at anchor and at a mooring is well known to mariners (especially those whose anchors have dragged in the middle of the night) and has been the subject of admiralty law decisions. In *Dahlmer* v. *Bay State Dredging & Contr. Co.*, 26 F.2d 603, 605 (1st Cir. 1928), it was held that § 180 does not require lights on a moored vessel, and in *Hill* v. *Fishing Vessel St. Rosalie*, 277 F. Supp. 636, 639 (D. Mass. 1967), the court said that a vessel tied to a mooring was not anchored. The court, describing facts resembling those in the case before us, wrote: "The mooring at which the Victory was tied was located within an area of the Inner Harbor designated by the Harbor Master for mooring purposes." *Id.* at 637. "The Victory was tied at a properly designated *mooring* in broad daylight and was not bound to the same requirements expected of ships *anchored* in channels plied by other ships" (emphasis in original). *Id.* at 639. The reason for the rule, of course, is that the presence of a craft at anchor in the travelled way is temporary and unexpected, and such a vessel must be visibly lit so that other vessels will not sail into her. A vessel riding at a mooring will be in an area where her presence is expected, and it becomes the duty of other mariners to maneuver around such a vessel. *Hill* v. *Fishing Vessel St. Rosalie*, 277 F. Supp. at 638. *The Jumping Jack*, 55 F.2d 925 (2d Cir. 1932), which the plaintiff has cited is of no help to him because it involved a channel collision with an anchored

vessel. Other cases which the plaintiff cites to demonstrate the legal consequence of a violation of § 180, such as *American Export Lines, Inc.* v. *Dredge Admiral,* 254 F. Supp. 1 (S.D.N.Y. 1966), and *Petersen* v. *Head Constr. Co.,* 367 F. Supp. 1072 (D.D.C. 1973), concerned collisions which occurred in a channel, where, again, the presence of a tethered vessel would not be expected.

3. Even had the plaintiff been able to establish that the defendant had violated rules of navigation, the trial judge nonetheless correctly ordered entry of a judgment notwithstanding the verdict because the proximate cause of the collision was the manner in which Neary navigated his boat. While the doctrine of "last clear chance" has been recognized in admiralty (*The Cornelius Vanderbilt,* 120 F.2d 766, 768 [2d Cir. 1941]; *Crawford* v. *Indian Towing Co.,* 240 F.2d 308, 311 [5th Cir.], cert. denied, 353 U.S. 958 [1957]; *Wasson Barge Rental Co.* v. *Tug Carrie D,* 296 F. Supp. 933, 936 [E.D. La. 1969]; compare *In re Robertson,* 163 F. Supp. 242, 244 [D. Mass. 1958], which recognizes the doctrine without identifying it as such) Judge Wisdom has cautioned against its use: "The shift in thinking, reflected in comparative negligence statutes, toward evaluating the conduct of the parties and weighing their proportionate share in the accident (which the layman does without straining his ratiocinative processes) is now leaving little elbow room for the last clear chance doctrine." *Cenac Towing Co.* v. *Richmond,* 265 F.2d 466, 470 (5th Cir. 1959).

Judge Wisdom did not stop there, recognizing that a somewhat blameworthy respondent must not always be held liable: "Call it anything: a condition, a remote cause, a non-contributing fault, the last clear chance; if, in the circumstances of the particular case, the respondent's fault is slight in comparison with the libellant's or there was a clear cleavage between respondent's fault and the collision, an admiralty court will evaluate the respective degrees of fault and exonerate the respondent." 265 F.2d at 471. The significant fact, however characterized, is

.

that a negligent act which does not cause injury will not support imposition of liability. *The Perseverance*, 63 F.2d 788, 790 (2d Cir.), cert. denied, 289 U.S. 744 (1933). *P. Dougherty Co.* v. *United States*, 207 F.2d 626, 630-631 (3d Cir. 1953), cert. denied, 347 U.S. 912 (1954). *Manning* v. *M/V Sea Road*, 358 F.2d 615, 617-618 (5th Cir. 1965).

Under these standards, the defendants must be exonerated without regard to any common law duty they may have had (and we do not so decide) to place lights on the floats.

Neary admitted to operating at ten miles per hour in the inner habor, in violation of two regulatory proscriptions: (1) the posted speed limit of five miles per hour; and (2) rule 24(h) of the State Boating Laws Rules and Regulations (1966),[4] which provided that under conditions of reduced visibility motor boats shall operate at not more than headway speed. On a dark night in an inner harbor, these regulations, as well as common prudence, required Neary to move with caution. "A vessel entering a crowded harbor ... is bound to exercise more than ordinary care." *Old Time Molasses Co.* v. *United States*, 31 F.2d 963, 965 (5th Cir. 1929). Violation of the regulations brings into play the role of *The Pennsylvania*, 86 U.S. at 136, requiring the vessel committing a plain fault to demonstrate that its fault could not have contributed to the collision.[5] *Chesley* v. *Nantasket Beach Steamboat Co.*, 179

---

[4] The boating rules and regulations were adopted by the director of the Division of Motorboats (now the Division of Marine and Recreation Vehicles) pursuant to his authority under G. L. c. 90B, § 11.

[5] An aspect of the rule of *The Pennsylvania*, that a vessel which failed in meeting the burden that its statutory violation could not have contributed to the collision must bear half the collision damage, was overruled in 1975 in *United States* v. *Reliable Transfer Co.*, 421 U.S. 397, 405-406 (1975). The rule still holds force in so far as it is necessary for a vessel to meet that burden if it is to achieve exoneration from liability. If it does not carry that burden, it is now open to the vessel to establish its proportional liability because the Supreme Court in the *Reliable Transfer* case adopted a policy of allocating damages in maritime collisions or strandings on the basis of the degree of fault. That

Mass. 469, 472 (1901). *Tug Ocean Prince, Inc.* v. *United States*, 584 F.2d 1151, 1160 (2d Cir. 1978). *American Export Lines* v. *Dredge Admiral*, 254 F. Supp. at 8. Had Neary been operating within the statutory speed limits, it is, at the least, less likely that the collision would have occurred or, had it occurred, that it would have resulted in physical injuries. Nor did Neary respond with any evasive action (he accidentally throttled up rather than down upon impact) when he saw the float twenty-five to thirty yards in front of him. A change of course, *In re Robertson*, 163 F. Supp. at 244, or shutting off power, *The Barbara*, 62 F. Supp. 265, 269 (D. Mass. 1945), would have avoided or minimized the accident.

At the least, therefore, it was just as reasonable to suppose that Neary's handling of his boat caused the collision as it was to suppose that any conduct of any of the defendants caused the accident, and it was, therefore, in order to allow a motion for judgment notwithstanding the verdict. *Alholm* v. *Wareham*, 371 Mass. at 627.

On the view we take of the case, it is not necessary to consider the other issues raised by the parties on appeal.

*Judgment affirmed.*

---

is not an issue in the instant case, where we have decided that the defendants violated no statute.