Fremont-Smith, J.
The plaintiff, John M. Bulbrook, brought this action to recover salary he allegedly deferred while working for the defendant, Family Funding, Inc. (hereinafter “FFI”). After a trial, the jury returned a $43,900 verdict in favor of Bulbrook. FFI has now moved for judgment N.O.V. and, in the alternative, a new trial. For the following reasons FFI’s motion for new trial is denied and its motion for judgment N.O.V. is allowed.
BACKGROUND
The evidence, in the light most favorable to the plaintiff, was as follows. At all times relevant to this lawsuit Bulbrook was the treasurer, a director, and a 31.7% shareholder in FFI. Glen Brewster was president, a director, and a 33.6% shareholder in FFI. FFI was and is a close corporation incorporated in the state of Delaware, in which Brewster now owns 99% of the stock.
On October 2, 1977, Bulbrook and Brewster each entered into written employment contracts with FFI in which each was to receive a salary of $60,000 for performing their respective company duties. These one-year contracts were to expire on September 30, 1978. During the term of the contracts Bulbrook and Brewster collected only $38,050, thereby leaving unpaid balances of $21,950. There was evidence upon which the jury could find that Bulbrook and Brewster, concerned with the company cash flow, agreed to defer the remainder of their salaries until a “more appropriate time” (Trial Vol. I, p.44) in order to “properly match [FFI’s] cash flow.” Trial Vol. I, p.66.
On June 28, 1978, an FFI shareholders’ meeting was held. Brewster and his wife (an FFI director) were the only attendees. Brewster held a proxy signed by Bulbrook allowing Brewster to represent Bulbrook. At this meeting the shareholders (Brewster and Bulbrook by proxy) voted to authorize FFI to negotiate and execute new one-year $60,000 employment contracts with Bulbrook and Brewster. There was evidence upon which the jury could find, as it did, that Bulbrook subsequently entered into such a one-year contract, that Bulbrook was again paid only $38,050 (a shortfall of $21,950), and that the corporation once more agreed to defer the deficiency. Trial Vol. I, p. 44.
*643 Bulbrook and Brewster did not disclose this deferred corporate obligation in financial statements filed with the S.E.C. or sent to shareholders, but, on the contrary, indicated in such documents that the company had a profit and had no significant deferred liabilities.
Bulbrook and Brewster had a falling out in 1983. Bulbrook resigned on March 16, 1984, at which time he first demanded the $43,900 that FFI had withheld from him on his 1977-78 and 1978-79 employment contracts. On the evidence, the net profits of FFI for the calendar years 1977-1983 could be found to have been as follows:
1977 — $15,626
1978 — $36,884
1979 — $25,062
1980 — $ 6,381
1981 — $30,941
1982 — $26,541
1983 — $30,246
DISCUSSION
I. Motion for a New Trial
The defendant has moved for a new trial pursuant to Mass.R.Civ.P. 59, claiming that (1) the verdict is contrary to the law, and to the weight of the evidence; and (2) the Court erred by failing to instruct the jury (a) on the strict fiduciary duties of close corporation shareholders, (b) on alleged plaintiff admissions, and (c) on the defendant’s estoppel defense.
The defendant first argues that the Bulbrook-Brew-ster agreement to defer Bulbrook’s salary was void ab initio because it was done without the knowledge and consent of FFI’s minority shareholders, in violation of the strict fiduciary obligations between shareholders in a close corporation imposed by Donahue v. Rodd Electrotype Company of New England, Inc., 367 Mass. 578, 593 (1975), and its progeny.[1]
Here, however, FFI is not asserting non-disclosure of the agreements on behalf of minority shareholders who were injured by a bad faith corporate decision of majority shareholders as in Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 851 (1976); Crowley v. Communications for Hospitals, Inc., 30 Mass.App.Ct. 751, 759 (1991); or as a result of a bad faith decision of a minority shareholders which injured other shareholders (as in Smith v. Atlantic Properties, Inc., 12 Mass.App.Ct. 201 (1981)). Here, the corporation (99% owned by Brewster) is seeking to invalidate contracts entered into, on behalf of the corporation, by Brewster, who was an equal beneficiary of the contracts and who was a party to the non-disclosure. In these circumstances, it would be incongruous to view FFI (and Brewster) as having standing to interpose the non-disclosure as a corporate defense.
The defendant further objects to the Court’s failure to instruct the jury that plaintiffs’ non-disclosure, in financial statements filed with the SEC or sent to shareholders, of the deferred compensation, constituted a binding admission that plaintiff had waived such compensation. Plaintiff expressly denied any intention of waiver at trial, however, and the Court believes that it correctly instructed the jury that the non-disclosure could be considered in deciding that issue, but declined to instruct that it constituted a waiver as a matter of law.
Accordingly, should the Appeals Court overturn this court’s granting of judgment N.O.V., this Court believes that the judgment for the plaintiff should simply be reinstated, as the verdict was not otherwise against the weight of the evidence or the result of any accident, error or misfortune which resulted in a miscarriage of justice.
II. Motion for Judgment N.O.V.
In assessing a motion for judgment N.O.V., the court must take the evidence in a light most favorable to the plaintiff. Michnik-Zilberman v. Gordon’s Liquor, Inc., 390 Mass. 6, 7 n.1 (1983). In reviewing the sufficiency of the evidence, the court must look to see whether anywhere in the evidence, from whatever source derived, any combination of circumstances can be found from which a reasonable inference can be drawn in favor of the plaintiff. Blais-Porter, Inc. v. Simboli, 402 Mass. 269, 274 (1988). Conflicting evidence, without more, will not justify a judgment N.O.V. O’Shaughnessy v. Besse, 7 Mass.App.Ct. 727, 729 (1979). As discussed above, the admitted non-disclosure of the deferred compensation to minority shareholders did not invalidate the contracts ab initio and therefore provides no basis for judgment N.O.V.
The defendant further argues, however, that G.L.c. .260, §2 provides for a six-year limitation period for contract actions, which here bars plaintiffs action as a matter of law. The Bulbrook employment contract was to expire, by its terms, on September 30, 1978, whereas suit was not filed until November 1984. The jury could find, however, on the evidence, that the parties’ alleged decision to defer part of the salary created a new contract term which enlarged the time of performance. It is well settled that “a written contract, before breach, may be varied by a subsequent oral agreement made on sufficient consideration.” Zlotnick v. McNamara, 301 Mass. 224, 225 (1938). The subsequent agreement “may enlarge the time of performance, or may vary any term of the contract. . .” Id. at 225-26. While the jury could have thus concluded that the time for payment was extended, the question remains: Has plaintiff met his burden of establishing that FFI breached its agreement to pay his deferred salary at some point within six years prior to the commencement of suit?
Bulbrook first argues that FFI’s duly to pay the deferred salary only arose within a reasonable time after demand was made. To bolster this claim, plaintiff *644 testified that, when Brewster was threatening to leave FFI in 1983, Bulbrook offered Brewster his deferred salary.
There was no evidence, however, that the corporation agreed to defer payment or performance until a reasonable time after demand. Cf. C.J. Hogan, Inc. v. Atlantic Corp., 332 Mass. 322, 328 (1955). Here, the only evidence was that the agreement was to defer salary until such payments “matched FFI’s cash flow,” because of concern that the corporation be able to show a profit.
The matching of deferred salary to available profits thus constituted the triggering event or condition precedent for FFI’s duty to pay the salary, and the time of occurrence of any breach.
The question becomes, then, whether the plaintiff satisfied his burden of proving a breach of contract, i.e., that the FFI cash flow, at some point within six years of filing suit, became sufficient to pay his (and Brewster’s) deferred salary.[2]
Brewster and Bulbrook were owed a combined $43,900 at the end of 1978, and this figure escalated to at least $65,850 at the end of 1979 when the 1978-79 employment contract expired without payment of $21,950 to Bulbrook. FFI’s net profits, however, never exceeded $36,884 (the profits earned in 1978). Thus, FFI’s cash flow was never shown to have been great enough to absorb the deferred salary in any year.
The plaintiff thus failed to prove an essential element of his action, namely, that the condition precedent to his right to collect his deferred salary has ever occurred, or that his contracts were ever breached. As the plaintiff has failed to prove an essential element of his case, the Court grants defendant’s motion for judgment N.O.V. Delaney v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 406-08 (1989).[3]
ORDER
For the foregoing reasons, the defendant’s motion for new trial is DENIED, and the defendant’s motion for judgment N.O.V. is ALLOWED.

 There, the Supreme Judicial Court held that majority shareholders in a close corporation owe a duty of the utmost good faith, loyalty, and fair dealing to minority shareholders.

 Bulbrook testified without contradiction that he and Brewster agreed to always take equal salary payments from FFI. Trial Vol. I, p. 58.

 Should FFI’s profits enable payment of the deferred income in the future, plaintiffs action will have accrued, and plaintiff will be entitled to the deferred salary plus interest from the date of accrual, based upon collateral estoppel as to the issues already litigated between the parties.