## SUFFOLK CONSTRUCTION COMPANY, INC. *vs.* LANCO SCAFFOLDING CO., INC.[1]

No. 97-P-807.

Suffolk. May 5, 1999. - September 15, 1999.

Present: KASS, PORADA, & LENK, JJ.

*Contract,* Subcontract, Indemnity, Construction of contract. *Indemnity.*

Where there was no ambiguity in a written contract as to its effective date, the trial judge erred in admitting extrinsic evidence of the parties' intentions on that issue and in submitting the question to the jury; the defendant's motion for judgment notwithstanding the verdict should have been allowed, where there was no liability under the contract for the defendant's alleged negligence occurring before the date the contract was executed. [729-732]

CIVIL ACTION commenced in the Superior Court Department on May 18, 1994.

The case was tried before *Thayer Fremont-Smith,* J., and motions for judgment notwithstanding the verdict and for a new trial were heard by him.

*Lawrence J. Kenney, Jr. (Robert G. Eaton & Roger H. Randall* with him) for the defendant.

*John E. Keenan, Jr.,* for the plaintiff.

LENK, J. The central question on appeal is whether a contract between a general contractor and its scaffolding subcontractor should be given retroactive effect such that an indemnification clause in that contract would apply to losses incurred before the date of the written contract.

On May 22, 1991, while working at a construction site for a public school, Stephen Hast fell off some scaffolding and was injured. Hast thereafter brought suit against the general contractor, Suffolk Construction Company, Inc. (Suffolk), and against

---

[1]The only parties before us on appeal are the plaintiff in cross claim, Suffolk Construction Company, Inc., and the defendant in cross claim, Lanco Scaffolding Co., Inc. The other parties are identified in the body of the opinion.

the subcontractor that built the scaffolding, Lanco Scaffolding Co., Inc. (Lanco). Suffolk cross claimed against Lanco for, insofar as relevant to this appeal, express indemnification and breach of Lanco's contractual obligation to list Suffolk with its insurer as an additional insured. Suffolk took the view that its written subcontract with Lanco was in effect on May 22, 1991, the day of Hast's accident, while Lanco maintained that the written subcontract did not go into effect until May 24, 1991, at the earliest, two days after the accident.

At trial, the judge concluded that the written subcontract was ambiguous as to its effective date and left it for the jury to determine whether the parties intended the contract to cover the period on and before the May 22, 1991, accident. The jury found that the parties did intend retroactive effect but that Lanco had not breached its obligation to list Suffolk as an additional insured.[2] The jury also found, with respect to Suffolk's claims against Lanco, that Lanco was negligent and that its negligence proximately caused Hast's injuries.[3] Judgment entered for Suffolk on its cross claim against Lanco for indemnification. On appeal, Lanco contends that the judge erred in submitting the issue of the contract's effective date to the jury and in denying its motions for a directed verdict and subsequently for judgment notwithstanding the verdict and for new trial because, among other things, the written subcontract is unambiguous and did not become effective until after the date of the accident, and because there was, in any event, insufficient evidence that the written subcontract constituted a memorialization of an earlier agreement by Lanco to indemnify Suffolk.

The relevant facts are few. Lanco began work on the construction project sometime prior to May 7, 1991, a time when the parties had not yet entered into a formal written subcontract agreement for the scaffolding work. Suffolk sent Lanco a formal written subcontract agreement on June 6, 1991. It states at the top of the first page of the agreement that it was "made this 24th day of May 1991." Above the signature lines appear the

[2]Although Suffolk filed a notice of appeal, it did not pursue a cross appeal on this issue.

[3]As to Hast's claims against Suffolk, the jury found that Suffolk was negligent and that Suffolk's negligence was a proximate cause of Hast's injuries. The jury awarded Hast $2,240,000. Hast had settled his claim against Lanco before trial for $525,000. Suffolk had earlier settled its third-party complaint for indemnification against G. N. Prunier & Sons, Inc., Hast's employer.

words "[e]xecuted under seal as of the date first above written."
The subcontract contains, among other things, an indemnification provision and an insurance provision.[4]

After hearing voir dire testimony from Suffolk's project manager, the judge concluded, over objection, that the subcontract was ambiguous and that the issue of its effective date was for the jury to determine. The judge observed that there existed "sufficient ambiguity as to what was intended by the parties between Suffolk and Lanco as to whether or not this agreement, in spite of being dated May 24 and saying it was made as of that date, whether there was a mutual meeting of the minds that the agreement covered the entire span of the work preceding that date."

---

[4]The indemnification provision states in part:

> "The Subcontractor shall indemnify and hold harmless the Contractor, Owner, Architect, their respective agents, officers, employees and partners (hereinafter collectively "Indemnitees") from and against all claims, damages, losses, expenses (including, but not limited to, attorneys' fees), liabilities, interest, judgements which (i) are attributable to injury, sickness, disease, or death or to injury or to destruction or damage to property (other than the Work itself), including loss of use therefrom and (ii) are caused in whole or in part by any default or negligent act or omission of the Subcontractor, any sub-subcontractor or anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. . . ."

The insurance provision states in part:

> "The Subcontractor shall purchase and maintain such insurance as will protect itself from claims set forth below, which may arise out of, or result from its operations under this Agreement, whether such operations be by itself, or by any Sub-subcontractor, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts of them may be liable, including coverage for the following:

> . . .

> (3) Claims for damages because of Bodily Injury, sickness or disease, or death of any person other than its employees;

> . . .

> "The Subcontractor shall name the 'Contractor and/or the Owner and/or any other interested parties as designated by the Owner', as Additional Insureds on all Liability Policies of the Subcontractor, throughout the duration of the Project, and for the additional two (2) years after acceptance of the Contractor's completed work by the Owner."

The interpretation of a contract is generally a question of law. See *Daley* v. *J. F. White Contr. Co.*, 347 Mass. 285, 288 (1964); *Freelander* v. *G. & K. Realty Corp.*, 357 Mass. 512, 516 (1970); *Edmonds* v. *United States*, 642 F.2d 877, 881 (1st Cir. 1981). As such, the trial judge's determination that the subcontract at issue is ambiguous is subject to plenary review. See *RCI Northeast Servs. Div.* v. *Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir. 1987).

Contracts that are free from ambiguity must be interpreted according to their plain terms. See *Freelander* v. *G.K. Realty Corp.*, 357 Mass. at 516; *Haverhill v. George Brox*, ante 717, 720 (1999); *Fairfield 274-278 Clarendon Trust* v. *Dwek*, 970 F.2d 990, 993 (1st Cir. 1992). In interpreting a contract, the court must construe all words that are plain and free from ambiguity according to their usual and ordinary sense. *Morse* v. *Boston*, 260 Mass. 255, 262 (1927). *Levin* v. *Century Indem. Co.*, 279 Mass. 256, 258 (1932). Contract language is ambiguous where "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Fashion House, Inc.* v. *K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). However, "an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987).

We discern no ambiguity in the subcontract as to its effective date. The only date mentioned in the agreement is May 24, 1991, the date it was "made" and "[e]xecuted under seal." There are no other dates in the agreement whatever that might create ambiguity or confusion as to a different effective date for the contract. The ordinary meaning and usage of the words "made" and "executed," considered together, makes plain that the subcontract was produced, created or "made," and signed, put into effect or "executed" on May 24, 1991. The contract by its terms became effective two days after the accident.

This case is controlled in all material respects by *Greater Boston Cable Corp.* v. *White Mountain Cable Constr. Corp.*, 414 Mass. 76 (1992), the facts of which closely parallel those here. Greater Boston had hired White Mountain, a subcontractor, to rebuild part of a town's cable system. *Id.* at 77. White Mountain started working on the project before the terms of the agreement were put in writing, and it was during this time, on

April 8, 1985, that a White Mountain employee, Paradis, was injured on the job. *Ibid.* After the accident, Greater Boston prepared and sent to White Mountain, and the parties executed, a "Construction Agreement" that contained an indemnification clause. *Id.* at 78. On appeal, the court rejected Greater Boston's argument that it was entitled to express contract-based indemnity, stating that:

> "[P]rior to Paradis's accident Greater Boston and White Mountain were operating without a formal written agreement. After the accident, Greater Boston sent White Mountain a written 'Construction Agreement' which contained an indemnification clause. The construction agreement, by its terms, became effective three days after the accident."

*Id.* at 79.

The trial judge was of the view that *Greater Boston Cable Corp.* v. *White Mountain Cable Constr. Corp.*, *supra*, had no application because of the difference in the contract's language. Specifically, the judge found that "[u]nlike the contract in *Greater Boston Cable Corp.* v. *White Mountain Cable*, 414 Mass. 76 (1992) which specified the date it was 'effective,' the contract in this case only indicated the date the contract was signed and 'made' . . . ." Although the opinion in *Greater Boston Cable Corp.* v. *White Mountain Cable Constr. Corp.*, *supra*, uses the term "effective," *id.* at 78, the language of the actual contract there at issue, which is attached as an addendum to Lanco's brief, uses the words, "made and entered."[5] We conclude that any distinction urged by Suffolk between "made and entered" in the Greater Boston/White Mountain agreement and "made" in the agreement here is one without a difference. The meaning of the contract language in each case is plain, and the result is the same. The effective date was the date it was made and entered in the one case, and made and executed in the other, not any earlier date when the parties operated without a formal agreement and accidents occurred. Extrinsic evidence was accordingly unnecessary, and it was error both for the question as to the retroactive effect of the contract to have gone to

---

[5]There is no indication that the trial judge here had before him a copy of the actual "Construction Agreement" between Greater Boston and White Mountain.

the jury and to have denied Lanco's motion for judgment notwithstanding the verdict.

That motion should have been granted, moreover, because even if there were ambiguity in the contract language as to the effective date, the evidence before the jury was insufficient to permit them to have found an effective date earlier than May 24, 1991. In reviewing the denial of a motion for judgment notwithstanding the verdict, the standard is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff,' " *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *Abraham* v. *Woburn*, 383 Mass. 724, 727-728 (1981). The motion should only be granted when "there can be but one conclusion as to the verdict that reasonable men could have reached." *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728 (1979), quoting from *Simblest* v. *Maynard*, 427 F.2d 1, 4 (2d Cir. 1970).

The only evidence the jury had before them was the contract itself and the testimony of Suffolk's project manager and Lanco's president concerning their dealings prior to May 24, 1991. The only date contained in the contract itself is May 24, 1991. Lanco and Suffolk had never worked together on a job before this one, and Lanco never saw Suffolk's standard form contract until it received the contract Suffolk sent it on June 6, 1991. Before receiving it, Lanco had been told that it would have to provide "standard" insurance, but the term was not explained. The parties never discussed indemnification, nor did they discuss, before May 24, 1991, the subcontract's extensive written provisions concerning indemnification and insurance.

The evidence does not permit a reasonable inference that the May 24, 1991, contract "memorialized" an earlier oral agreement concerning indemnity and insurance, nor that the contract was in effect on May 22, 1991, the date of the accident. There was "one conclusion as to the verdict that reasonable men could have reached," *viz.*, that the contract was not in effect on May 22, 1991. *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. at 728. While there may have been an oral agreement pertaining to the "scope of the work" prior to the written contract, such agreement did not encompass the areas of indemnity and insurance. In light of the foregoing, we need not reach the other issues raised on appeal.

The judgment on the cross claim for indemnity is reversed, and the order denying the defendant in cross-claim's motion for judgment notwithstanding the verdict is reversed. A new judgment on the cross claim shall enter in favor of the defendant in cross claim.

*So ordered.*