JOHN I. RIEDLE & another[1] vs. BRIAN P. PETERSON & another.[2]

No. 89-P-638.

Worcester. September 11, 1990. - October 15, 1990.

Present: KASS, KAPLAN, & IRELAND, JJ.

*Mortgage*, Assumption. *Real Property*, Mortgage. *Practice Civil*, Attorney's fees.

Where the deed conveying certain real property stated, as part of the consideration for the purchase, that "the Buyer agrees to assume [certain listed encumbrances, including a mortgage] and to hold the Seller harmless with respect thereto," it was permissible for the seller, without first having paid the creditor, to recover, in an action against the buyer, outstanding indebtedness that had been represented by the mortgage; however, on remand, the judgment was to be amended so as to channel payment to the creditor. [381-382]

A recitation in a deed that the buyer would "hold the seller harmless" with respect to certain encumbrances was read to include reimbursement of legal fees incurred by the seller in recovering from the buyer the indebtedness that had been secured by a mortgage, in circumstances where the seller had not paid the creditor before proceeding against the buyer. [382-383]

CIVIL ACTION commenced in the Milford Division of the District Court Department on July 24, 1987.

The case was heard by *Francis J. Larkin*, J.

*Richard A. Villani* for the plaintiffs.

*Henry J. Lane* for the defendants.

KAPLAN, J. The Riedles, husband and wife, together called "seller," on November 20, 1985, conveyed property in Whitinsville to Peterson and Chugkowski, called "buyer." The deed stated, as part of the consideration for the purchase, that "the Buyer agrees to assume [certain listed

---

[1] Arlene G. Riedle.

[2] June M. Chugkowski.

encumbrances] and to hold the Seller harmless with respect thereto." One of the encumbrances was a mortgage of June 24, 1985, to Farmers Home Administration (FHA), given to secure the seller's promissory note in FHA's favor in the amount of $87,960.62. On May 7, 1986, FHA "released" the mortgage, but on the explicit understanding that the seller would remain personally liable on the note; and thereafter (as in a letter to the seller on January 8, 1988) FHA complained to the seller about the failure to pay the note.

On July 24, 1987, the seller commenced an action against the buyer in District Court to recover upon the buyer's quoted assumption agreement. Cross-motions for summary judgment described the transaction between the parties and disclosed that there was still outstanding indebtedness on the note. A judge of the District Court held for the seller and judgment entered against the buyer for $43,934.99, together with interest and costs, plus $3,241.25 representing the seller's attorney's and paralegal's fees. Upon report to the Appellate Division, that court modified the judgment by striking the provision for legal fees. The buyer appeals to this court, disclaiming all obligation; the seller cross-appeals, demanding restoration of the provision for fees.

A buyer taking "subject to" a mortgage is simply acquiring an equity of redemption and is not thereby personally obligated on any indebtedness secured by the mortgage. A buyer agreeing to "assume" a mortgage becomes personally obligated, and, when language of "holding harmless" is added, it is old learning that the seller, in case of the buyer's failure to pay, may proceed direct against the buyer without having first paid the debt, or, alternatively, having paid the debt, may sue the buyer for indemnity. See *Locke* v. *Homer*, 131 Mass. 93, 109 (1881); *Flynn* v. *Kenrick*, 285 Mass. 446, 448-449 (1934); *Nutter* v. *Mroczka*, 303 Mass. 343, 346 (1939).

That a seller should be able to pursue the former option was important at the time of the *Locke* case because the creditor, third-party beneficiary of the buyer's promise, did not have a right of suit against the buyer: the court in the

*Locke* case (at 107) indeed cited *Mellen* v. *Whipple*, 1 Gray 317 (1854), which denied the beneficiary a locus standi. What may appear anomalous is that the seller, suing the buyer, should be able to recover a judgment for the debt without being required to pay the avails to the creditor to whom the money was ultimately due. Our forebears recognized the difficulty. The *Locke* case indicated that it could be obviated in equity by holding the seller to be in effect a trustee of the fund in favor of the creditor. See *Locke*, 131 Mass. at 108-109. In fact the *Mellen* opinion also has a passage to this purpose, 1 Gray at 322.

In the modern practice, and with the *Mellen* inhibition of suit now overcome, see *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 545 (1979), we might expect that a seller who chose to sue the buyer would join the creditor (here the FHA as noteholder) as a party to the action; or, failing that, the buyer would move to bring the creditor into the action. See *Choate* at 549 n.23. In the present case, we shall not insist on modernity, but shall rather direct the court on remand so to frame the judgment, after hearing, as to make any necessary provision to channel payment to the creditor.

Had the seller followed the second option — paid the FHA and gone against the buyer for indemnity under the holding harmless clause[3] — then, after prevailing, the seller would be entitled to recover legal fees against the buyer. This would be so although perhaps the more common case is one where the indemnitee has legal expenses resisting a claim covered by the indemnity and then sues the indemnitor. See *Amoco Oil Co.* v. *Buckley Heating, Inc.*, 22 Mass. App. Ct. 973 (1986), and cases cited. The Appellate Division appears to agree to reimbursement of legal fees in the indemnity situation. Although the indemnity feature is out of the present case, we are disposed in the circumstances to read the holding harm-

---

[3]The *Choate* opinion refers to authorities holding that the beneficiary of a promise of indemnification is merely an "incidental" beneficiary without standing to sue. 378 Mass. at 546.

less language as broad enough to authorize the reimbursement here.

Upon remand, the court after hearing will reinstate the judgment as originally entered in District Court, with any necessary further provision as indicated in this opinion.

*So ordered.*