KATHLEEN A. HULL *vs.* NORTH ADAMS HOOSAC SAVINGS
BANK.

No. 98-P-1049.

Berkshire. January 18, 2000. - June 27, 2000.

Present: PERRETTA, KASS, & LENK, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Mortgage,* Foreclosure,
Real estate. *Bank. Waiver.*

In an action by a mortgagee against a bank that had foreclosed on three
properties, the judge correctly granted the bank's motion for judgment
notwithstanding the verdict, where the evidence presented did not support
a finding that the bank had not exercised good faith in its dealings with the
mortgagee in foreclosing. [517-518]

CIVIL ACTION commenced in the Superior Court Department on
October 5, 1994.

The case was tried before *William H. Welch,* J.

*William J. Pudlo* for the plaintiff.

*John A. Agostini* for the defendant.

KASS, J. In the face of an imminent mortgage foreclosure sale
on three properties, Kathleen A. Hull (Kathleen) brought an ac-
tion against the mortgagee, North Adams Hoosac Savings Bank
(bank). The complaint was filed on October 5, 1994, and the
foreclosure sale took place November 16, 1994.

A copy of the complaint does not appear in Kathleen's record
appendix, and we are left to infer that the theory of her action
was that the bank had acted unlawfully in demanding payment
of a mortgage note on which Kathleen was not a signatory.[1] The
case was tried to a jury, which returned a verdict for Kathleen
of $300,000. The trial judge allowed a motion for judgment
notwithstanding the verdict (judgment n.o.v.), and it was from

---

[1] It is not the duty of an appellate court to ferret from the original papers in
the record material that the parties have not included in the record appendix.
*Kunen* v. *First Agric. Natl. Bank,* 6 Mass. App. Ct. 684, 690-691 (1978).

the consequent judgment in favor of the bank that Kathleen now appeals.[2] We conclude, as did the trial judge, that the bank exercised contract rights set out in the mortgage documents and did not deal unlawfully with Kathleen.

1. *Facts*. In reviewing action on a motion for judgment notwithstanding the verdict, Mass.R.Civ.P. 50(b), as amended, 428 Mass. 1402 (1998), we take the evidence in the light most favorable to the plaintiff. *McAvoy* v. *Shufrin*, 401 Mass. 593, 596 (1988). *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979). So viewed, the jury might have found the following salient facts.

Before his marriage to Kathleen on December 28, 1985, M. Harry Hull (Harry), who had a variety of modest real estate investments, acquired two additional properties that play a role in this case: (1) On September 16, 1985, he acquired 26-28 East Quincy Street, North Adams, with a first mortgage to the sellers; and (2) On December 12, 1985, he acquired 67 Millard Avenue, Clarksburg, with a first mortgage to the bank. Following their marriage, Harry, on September 8, 1986, conveyed those properties to himself and Kathleen, as tenants by the entirety, subject to the mortgage on the Millard Avenue property, which the grantees assumed and agreed to pay. That same day, Kathleen and Harry obtained an additional loan for both properties from the bank subject to the existing loan on Millard Avenue. On January 5, 1988, Harry acquired 17 Yale Street, North Adams, and obtained a further loan from the bank secured by a first mortgage on that property and a mortgage on Millard Avenue (a third mortgage). All three properties were investment properties, i.e., they contained rental units. The Hulls lived in a rental unit in the Millard Avenue property.

Two months later, in March, 1988, Harry decamped from the marriage and his obligations in connection with the three properties. As to those properties, things stood as follows:

---

[2]Kathleen, in her brief, also purports to appeal from an adverse judgment on a count under G. L. c. 93A. Her notice of appeal, however, is directed expressly to the judgment notwithstanding the verdict. There is, therefore, no appeal from the judge's findings, order, and judgment on the c. 93A count. See *Finn* v. *McNeil*, 23 Mass. App. Ct. 367, 369-370 (1987). Parenthetically, as the c. 93A count appears to have been a satellite to the common-law grievance, substantive rights have not been lost by Kathleen's failure to claim an appeal on the c. 93A count.

|  | *Millard Avenue* | *East Quincy Street* | *Yale Street* |
|---|---|---|---|
| *1985 loan (to Harry)* | 1st mortgage (from Harry) | | |
| *1986 loan (to Harry & Kathleen)* | 2d mortgage (from Harry & Kathleen) | 1st mortgage (from Harry & Kathleen) | |
| *1988 loan (to Harry)* | 3d mortgage (from Harry) | | 1st mortgage (from Harry) |

By June, 1988, payments on all three loans were in default. For some months, Harry's whereabouts were unknown, but, in July, 1988, Kathleen learned that he was holed up in Hoosac Falls, New York. In October, 1988, the bank threatened foreclosure if the loan payments were not made current. The bank did not point out to Kathleen that she was not a signatory on the Yale Street mortgage note and that she, therefore, had no individual liability to the bank as to that property.[3] Kathleen borrowed $15,000 from her parents to bring current the payments on all the properties, including Yale Street.

In anticipation of divorce, for which he had filed, Harry, on May 31, 1989, conveyed to Kathleen his interest in the East Quincy Street property and the Yale Street property, subject to the mortgage on each, which Kathleen assumed and agreed to pay. A divorce judgment, entered March 4, 1991, ordered that Kathleen retain her interest in the three properties.[4] Conveyance by Harry to Kathleen of his interest in the Millard Avenue property followed on May 5, 1991. For Kathleen these conveyances turned out to be less than an unalloyed blessing. She struggled with the properties, and her ability to service the mortgage debt was no better than sporadic. Through her lawyer, she tried to restructure the financing with the bank, including surrendering one property to the bank and hanging on to the other two. The bank, however, insisted that all three loans be made and kept current. Ultimately, as marked in the opening

---

[3]To the extent that Kathleen rests her action on those events in 1988, the statute of limitations would have run on the misrepresentation claim and the c. 93A claim. We assume she proceeds on some theory of continuing misrepresentation by the bank of her liability. No statute of limitations defense has been made by the bank.

[4]Under the judgment of divorce nisi, Harry obtained sole ownership of a property in New York State and another in Florida.

paragraph of this opinion, the bank completed foreclosure proceedings on November 16, 1994, and by that time Kathleen had initiated her action against the bank.

2. *Discussion.* We have laid out the facts in some detail and at some length to test the correctness of the grant of judgment n.o.v. Kathleen's primary contention is that the bank owed her a duty to explain that she was not liable on Yale Street. Failing to do so, she says, saddled her with operating and attempting to maintain mortgage service on all three properties, a burden that was her undoing. The jury found (by special verdict) that the bank's insistence on payment of mortgages on all three properties was a failure on the part of the bank to exercise good faith in the bank's dealings with Kathleen and that this inflicted $300,000 in damages on her.

The facts do not admit of the finding of failure by the bank to exercise good faith; the question of damages falls by the wayside with that conclusion. Although Kathleen was not on the Yale Street mortgage note in October, 1988, when the bank first asked her for payment on that property along with the other two loans, she had already acquired an undivided interest in the primary security for that note, i.e., the Yale Street property, by deed from Harry dated February 16, 1988. In addition, the Yale Street loan from the bank was cross-collateralized by a third mortgage loan on Millard Avenue. Consequently, a default on Yale Street triggered a default on Millard Avenue. In turn, a default on Millard Avenue caused a default on East Quincy Street because those two properties had been mortgaged to the bank together to secure the September 8, 1986, loan. On the basis of the loan documents between the bank and the Hulls, the bank was quite within its rights in asking that the loans involving all three properties be made current, on pain of foreclosure if they were not. See *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 108 (1979).

Had there been any doubt about Kathleen's interest in Yale Street, that was resolved by her accepting sole title to it on May 31, 1989, with a proviso in the deed that the grantee, by accepting the deed, assumed and agreed to pay the mortgage to the bank. She then became personally liable on the Yale Street debt. *McRae* v. *Pope*, 311 Mass. 500, 505 (1942). *Reidle* v. *Peterson*, 29 Mass. App. Ct. 380, 381 (1990). She also acquired the title to the Millard Avenue and East Quincy Street properties.

Between the time of Kathleen's acquisition of sole title to the three properties on May 31, 1989, more than five years went by before the bank foreclosed on the three loans in November, 1994. The forbearance of the bank did not work a waiver of its rights as a mortgagee under the loan documents nor was it inequitable for the bank to exercise its contractual rights under the governing documents. *Sandler* v. *Green*, 287 Mass. 404, 407-408 (1934). *Petti* v. *Putigano*, 8 Mass. App. Ct. 293, 296 (1979).

It follows that the judge correctly allowed the motion for judgment n.o.v.

*Judgment affirmed.*